In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00043-CV


____________________



IN RE COMMITMENT OF GERALD WILSON






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 07-02-02127-CV






MEMORANDUM OPINION


 The State of Texas filed a petition to civilly commit Gerald Wilson as a sexually
violent predator pursuant to Chapter 841 of the Texas Health and Safety Code. See Tex.
Health & Safety Code Ann. §§ 841.001-.150 (Vernon 2003 & Supp. 2008). A jury found
that Wilson suffers from a behavioral abnormality that makes him likely to engage in a
predatory act of sexual violence. See id. § 841.003 (Vernon 2003). The trial court entered
a final judgment and order of civil commitment from which Wilson appeals. On appeal,
Wilson argues (1) there was legally insufficient evidence that Wilson suffers from a
behavioral abnormality that makes him likely to engage in a predatory act of sexual violence;
(2) there was factually insufficient evidence that Wilson suffers from a behavioral
abnormality that makes him likely to engage in a predatory act of sexual violence; (3) a
limiting instruction was insufficient to cure an improper jury argument; and (4) the trial court
abused its discretion by admitting prejudicial, cumulative hearsay-within-hearsay statements. 
We affirm the judgment of the trial court.

 On November 6, 2007, a jury was empaneled and the State presented evidence
through several witnesses: Gerald Wilson, Dr. Paul Hamilton, and Dr. Rhan Bailey. The
State presented the testimony of Wilson by video deposition. Wilson testified that he learned
about sex at age twelve or thirteen through pornography. Wilson testified about his seven
convictions for sexual offenses, all of which were against children. Wilson committed his
first offense at age eighteen. Except for his first offense, all of the offenses of which he was
convicted were committed while he was under supervision for prior offenses. Wilson's
offenses were committed against both boys and girls, and he acknowledged that he was
"attracted to kids in general." Wilson testified that he committed the offenses because they
were sexually exciting to him. Wilson admitted to cruising neighborhoods and driving by
schools looking for children to victimize. 

 Wilson admitted that he still fantasizes about children, but he stated that when he has
such fantasies, he directs his attention to something else. Wilson explained that controlling
his fantasies requires a "daily maintenance" of those fantasies. Wilson testified that he is
currently in phase two of the Sex Offender Treatment Program ("SOTP") and that he does
not think he is at risk to reoffend. Wilson acknowledged that it would not be healthy for him
to be around children, but testified that he did not think it would be dangerous. While he
acknowledged that he may still have a problem, he testified that he is able to deal with it. 

 Following Wilson's deposition testimony, the State presented testimony through Dr.
Paul Hamilton, a psychologist. Wilson chose not to participate in the meeting with Dr.
Hamilton. Dr. Hamilton reviewed the records, including victim statements, investigation
records, prison records, and court records, and he testified that he had adequate information
to conduct an assessment of Wilson. Wilson's prior alcohol abuse, drug abuse, employment
history, and juvenile history were all considered by Dr. Hamilton. Dr. Hamilton also testified
regarding Wilson's prior sexual convictions. 

 Dr. Hamilton testified that Wilson's use of force, intimidation, and threats with his
victims showed a certain degree of "predatorship;" that Wilson wanted to be in control of the
person he was victimizing. Dr. Hamilton explained that Wilson became more bold in
committing his offenses as he continued to offend. Dr. Hamilton further testified that
Wilson's actions in committing his offenses showed a pattern of grooming the children. Dr.
Hamilton found it significant that Wilson continued to offend while on probation after being
released from prison. According to Dr. Hamilton, this suggested a decreased belief by
Wilson that he could control his urges or impulses. 

 Dr. Hamilton testified that Wilson's plans for the future were unrealistic and
demonstrated a lack of ability to make long-term goals and "to address the issues that got him
into prison in the first place." Dr. Hamilton observed that Wilson showed a "lack of
emotional connectiveness" [sic] during his deposition. According to Dr. Hamilton, Wilson
also seemed to have "a lot of difficulty with impulse control" and had experienced
"significant distress in terms of his occupational and social life." 

 Dr. Hamilton performed three actuarials on Wilson: the Static 99, the Minnesota Sex
Offender Screening Tool ("M-SOST"), and the Hare Psychopathy Checklist. Dr. Hamilton
testified that Wilson scored "an eight" on the Static 99, which showed an increased risk of
recidivism, and on the M-SOST, he scored "a plus 12" which also showed an increased risk
of reoffending. Dr. Hamilton explained that Wilson scored a raw score of 16 on the Hare
Psychopathy Checklist, which was below a score that would indicate that he is a true
psychopath. Dr. Hamilton found it significant that Wilson had victimized both males and
females. Dr. Hamilton diagnosed Wilson with pedophilia and antisocial personality disorder,
and he explained the basis of his diagnoses. Dr. Hamilton testified that in his opinion,
Wilson meets the criteria for a sexually violent predator and that he is likely to reoffend. Dr.
Hamilton found various risk factors significant in making this determination, including:

 the number of offenses [Wilson] committed, the fact that [he] committed those
offenses in spite of having been punished, his lack of emotional
connectiveness [sic] with people, his lack of stability. . . picking on victims
that he doesn't know, having male victims, not ever really having a long-term
relationship with anybody. . . . [h]aving history of drug and alcohol abuse . .
. having poor impulse control . . . I don't know if that's a comprehensive list
. . . .


Dr. Hamilton opined that Wilson has a behavioral abnormality that makes him likely to
engage in predatory acts of sexual violence. 

 Dr. Rhan Bailey, a forensic psychiatrist, also testified for the State. Unlike Dr.
Hamilton, Dr. Bailey did have an opportunity to meet with Wilson in making his assessment
of whether Wilson has a behavioral abnormality. Dr. Bailey met with Wilson for
approximately an hour. In addition, Dr. Bailey reviewed Wilson's records, including records
from the prison system, which included health records, notes from Wilson's participation in
the SOTP, as well as legal records such as arrests and charges filed against Wilson. Dr.
Bailey testified that the underlying facts and data from these records formed part of the basis
of his opinion. 

 Dr. Bailey found Wilson's prior alcohol and drug abuse significant. Dr. Bailey
explained that she was looking for factors that may place Wilson at a greater risk for
reoffending. According to Dr. Bailey, alcohol is "one of the most central factors" that is
often present in individuals who engage in sexually offensive behavior or return to such
behavior. Dr. Bailey and Wilson discussed his sexual history. Dr. Bailey testified that
Wilson had a history of sexual fantasies, and that although Wilson acknowledged that those
fantasies had been a big problem for him in the past, he believed they were getting better. 
Dr. Bailey also testified that as late as 2007, Wilson acknowledged that the fantasies still
existed, and those fantasies remained "a great cause for concern" because they could fuel a
problem that could again lead to illegal behavior. 

 Dr. Bailey and Wilson also discussed Wilson's sexual criminal convictions. Dr.
Bailey noted that Wilson has many convictions, which according to Dr. Bailey, implied very
little self-restraint. Dr. Bailey also found significant that Wilson displayed "a variety or
diversity of [sexual] activity," as well as "a pretty substantive power deferential" in
committing his offenses. Dr. Bailey testified that individuals at the highest risk for reoffense
are those who have committed sexual offenses against both males and females, as such
individuals have "a much more dangerous perspective to try to manage." Like Dr. Hamilton,
Dr. Bailey testified that there was a pattern of grooming in Wilson's offenses. 

 Dr. Bailey explained to the jury that Wilson's most recent convictions showed a
greater degree of interest in the offensive conduct by Wilson, and that "the behaviors became
easier [for Wilson] to engage in." There was also an increased level of risk with respect to
Wilson's later offenses, as well as a greater power differential between Wilson and his
victims. Dr. Bailey found significant that during one offense, Wilson posed as an authority
figure, which showed that Wilson was willing to go to fairly substantial extremes to
accomplish his goal of offending. Dr. Bailey testified that Wilson became someone "who
needed a particularly higher level of risk to get the same reward, the same satisfaction,"
ultimately leading to an aggravated charge. Wilson explained to Dr. Bailey that as he began
committing the later offenses, he began taking bigger risks. "He was more willing to
threaten. . . . more willing to harm . . . . [and] certainly more willing to engage in aggressive
acts to accomplish . . . the end goal . . . ." 

 Dr. Bailey likewise performed actuarials on Wilson. Specifically, Dr. Bailey
performed the Hare Psychopathy Checklist and the Static 99. On the Static 99, Wilson
scored an 8, which represented a high level of risk for reoffending. On the Hare Psychopathy
Checklist, Wilson scored a 33, which was close to the maximum score of 40, indicating a
higher degree of risk for reoffending. Dr. Bailey diagnosed Wilson with pedophilia and anti-social personality disorder. Dr. Bailey testified that Wilson met the criteria of having a
behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. 
 The jury heard testimony on behalf of Wilson from two witnesses: Rabbi Jimmy Pratt
and Reverend James "Jimmy" Stockton. Rabbi Pratt testified that Wilson was a "changed
man" and that he "had a heart for the things of God." Rabbi Pratt testified that Wilson spoke
to him about his prior sexual offenses and his continuing sexual fantasies about children. 
Rabbit Pratt maintained that Wilson was a changed man. Rabbi Pratt testified that he
believes Wilson is healed, is no longer a sex offender, and does not need treatment. 
Reverend Stockton testified that he has known Wilson for twelve years. Like Rabbi Pratt,
Reverend Stockton also testified that he believed Wilson was a changed man. 

LEGAL AND FACTUAL SUFFICIENCY 


 In issues one and two, Wilson argues that the evidence is legally and factually
insufficient to support the jury's verdict. "Because the statute employs a beyond-a-reasonable-doubt-standard, on appeal we review legal sufficiency issues by the standard of
review applied in criminal cases for legal sufficiency of the evidence." In re Commitment
of Gollihar, 224 S.W.3d 843, 846 (Tex. App.--Beaumont 2007, no pet.) (citing In re
Commitment of Mullens, 92 S.W.3d 881, 885 (Tex. App.--Beaumont 2002, pet. denied)). 
"To test the legal sufficiency of the evidence that supports an affirmative jury finding, we
review all of the evidence in a light most favorable to the verdict." Id. In the present case,
we review the evidence presented at trial to determine if a rational jury could have found
beyond a reasonable doubt that Wilson has a behavioral abnormality that makes him likely
to engage in predatory acts of sexual violence. See In re Commitment of Sanchez, No. 09-06-244 CV, 2007 WL 1443403, at *1 (Tex. App.--Beaumont May 17, 2007, no pet.) (mem. op.). 
We will also apply the factual sufficiency standard applied in criminal cases with respect to
our factual sufficiency review in the present case. Gollihar, 224 S.W.3d at 846. Viewing
the evidence in a neutral light, we will determine whether a jury was rationally justified in
finding guilt beyond a reasonable doubt. See id. "To reverse a case on a factual sufficiency
challenge, we must be able to say that the great weight and preponderance of the evidence
contradicts the jury's verdict or that the verdict is clearly wrong and manifestly unjust." Id.
(citing Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)).

Legal Sufficiency of the Evidence


 In issue one, Wilson argues that "[i]t is the State's burden of production, beyond a
reasonable doubt, [to show] that Wilson has not changed and is currently dangerous," and
that the State has offered no evidence of Wilson's current dangerousness. Wilson cites
Coastal Transport Co. v. Crown Central Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004)
and E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556-57 (Tex. 1995), for
the proposition that Drs. Hamilton and Bailey reached their diagnoses and conclusions that
Wilson suffers from a behavioral abnormality based solely on his past behavior, and that
"[w]ithout making a proper assessment of Wilson's current mental status, the expert's
testimony is 'not grounded in the methods and procedures of science [and] is not more than
subjective belief or unsupported speculation.'" 

 The Texas Supreme Court has held that "a party may complain that conclusory
opinions are legally insufficient evidence to support a judgment even if the party did not
object to the admission of the testimony." City of San Antonio v. Pollock, 284 S.W.3d 809,
816 (Tex. 2009) (citing Coastal Transp. Co., 136 S.W.3d at 232). The Court distinguished
between the admission of unreliable expert testimony and conclusory expert testimony:

 When a scientific opinion is admitted in evidence without objection, it
may be considered probative evidence even if the basis for the opinion is
unreliable. But if no basis for the opinion is offered, or the basis offered
provides no support, the opinion is merely a conclusory statement and cannot
be considered probative evidence, regardless of whether there is no objection.


Id. at 818. An expert's testimony is conclusory, regardless of whether his methodology is
reliable, when the facts upon which he relied, on their face, do not support his conclusion. 
Id. 817-18. Where there is no basis in the record for an expert's opinions, those opinions
cannot support the judgment. Id. at 818. Based on our review of the record, we conclude
that the bases offered by Dr. Hamilton and Dr. Bailey provide support for their opinion that
Wilson suffers from a behavioral abnormality. 

 Under the statute, a "behavioral abnormality" is defined as "a congenital or acquired
condition that, by affecting a person's emotional or volitional capacity, predisposes the
person to commit a sexually violent offense, to the extent that the person becomes a menace
to the health and safety of another person." Tex. Health & Safety Code Ann. §
841.002(2) (Vernon Supp. 2008). Therefore, a finding that a person has a behavioral
abnormality entails a finding that the person is currently dangerous to the health and safety
of others. See id. "The jury is the sole judge of the credibility of the witnesses and the
weight to be given their testimony." Mullens, 92 S.W.3d at 887 (citing Barnes v. State, 876
S.W.2d 316, 321 (Tex. Crim. App. 1994)). "The jury may resolve conflicts and
contradictions in the evidence by believing all, part, or none of the witnesses' testimony." 
Id. (citing Losada v. State, 721 S.W.3d 305, 309 (Tex. Crim. App. 1986)). Further, a jury
may also draw reasonable inferences from basic facts to ultimate facts. Id. (citing Lacour
v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000)). Wilson's current dangerousness could
be inferred from Wilson's past behavior, Wilson's own testimony, or the experts' testimony. 
See generally In re Commitment of Grinstead, No. 09-07-00412-CV, 2008 WL 5501164, at
*7 (Tex. App.--Beaumont Jan. 15, 2009, no pet.) (mem. op.). Viewing the evidence in the
light most favorable to the jury's verdict, we find the evidence is legally sufficient to support
the jury's finding that Wilson suffers from a behavioral abnormality. 

Factual Sufficiency of the Evidence


 In his second issue, Wilson argues that the expert's conclusions "are not reliable
expert testimony" and that "[i]n light of Wilson's testimony that he had indeed changed, with
uncontroverted evidence that he had sought and completed treatment programs, the expert
witnesses' unsupported conclusions that Wilson presents a current danger do not meet the
threshold of reliability." Wilson's complaint that the experts' testimony was not reliable was
not preserved for our review. (1) Viewing the evidence in a neutral light, we find the evidence
is factually sufficient to support the jury's verdict. We overrule issues one and two.

JURY ARGUMENT 


 The following took place during the State's closing argument:

 [State's Counsel]: Now, today we heard from Rabbi Pratt and Reverend
Stockton; and while I'm certain that they have good
hearts in this matter as well, they do not bring any expert
testimony that supports their position that Mr. Wilson
does not have a behavioral abnormality. I'm certain that
they are fine upstanding people in their respective
religious communities. That's not what's at issue in this
case today. . . . Where were their experts? Where were
their medical, their psychologist or psychiatrist? 


 [Wilson's Counsel]: Your Honor, I'm going to object to this line of statement
during closing based on our -


 THE COURT: Sustained. 


 [State's Counsel]: [We] [b]rought to you a psychologist and psychiatrist to
testify and establish that he has a behavioral abnormality. 
You have not heard one medical professional in the field
of psychiatry tell you otherwise.


 Following the conclusion of the State's closing argument, Wilson's counsel made a
motion for mistrial, which the court denied. Thereafter, Wilson's counsel requested that a
limiting instruction be given. The Court provided the jury with the following limiting
instruction: 

 Members of the jury, during the opening part of the Petitioner's argument,
counsel referred to a situation that she said something along the lines as to
questioning where was the expert witness on behalf of the Respondent? The
objection is that that was improper and the court -- this case, as in all cases
practically, we have pre-trial orders entered; and, in this case, the court had
ruled that it would be improper to make any reference to the Respondent's
inability or failure to retain an expert witness. So the reference made by
counsel for the State would appear to be in violation of the Court's instruction,
and I am going to instruct you at this time to disregard that statement by
counsel and not consider it for any purpose in your deliberations. Okay. 


 On appeal, Wilson argues that the limiting instruction was insufficient to cure the
improper jury argument. For an appellant to obtain reversal based upon improper jury
argument, he must demonstrate the following: "'(1) an error, (2) that was not invited or
provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion
to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt
withdrawal of the statement, or a reprimand by the judge.'" In re Commitment of Eeds, 254
S.W.3d 555, 560 (Tex. App.--Beaumont 2008, no pet.) (quoting Standard Fire Ins. Co. v.
Reese, 584 S.W.2d 835, 839 (Tex. 1979)). Wilson argues that counsel's jury argument was
so inflammatory that it could not be cured by an instruction to disregard. 

 "There are only rare instances of incurable harm from improper argument." Reese,
584 S.W.2d at 839. "Almost any improper argument may be cured by an instruction to
disregard." Newby v. State, 252 S.W.3d 431, 438 (Tex. App.--Houston [14th Dist.] 2008,
pet. ref'd) (citation omitted). "The complainant has the . . . burden to prove . . . that the
argument by its nature, degree and extent constituted reversibly harmful error." Reese, 584
S.W.2d at 839. In making this determination, we may consider how long the argument
continued, whether it was repeated or abandoned, and whether there was cumulative error. 
Id. at 839-840. In addition, we must examine all of the evidence to determine the argument's
probable effect on the jury's material finding. Id. at 840. "[A] reversal must come from an
evaluation of the whole case, which begins with voir dire and ends with the closing
argument." Id. To meet his burden, "the complainant must show that the probability that the
improper argument caused harm is greater than the probability that the verdict was grounded
on the proper proceedings and evidence." Id. 

 Improper jury argument results in incurable harm only in rare instances,
such as an appeal to racial prejudice, calling someone a liar or a fraud, or by
making an unsupported charge of perjury. Whether an argument is incurable
depends on "the degree of prejudice flowing from the argument - whether the
argument, considered in its proper setting, was reasonably calculated to cause
such prejudice to the opposing litigant that a withdrawal by counsel or an
instruction by the court, or both, could not eliminate the probability that it
resulted in an improper verdict."


UMLIC VP LLC v. T&M Sales and Envtl. Sys., Inc., 176 S.W.3d 595, 617 (Tex. App.--Corpus Christi 2005, pet. denied) (quoting Tex. Employers' Ins. Ass'n v. Haywood, 153 Tex.
242, 266 S.W.2d 856, 858 (1954)) (citation omitted); see also Living Ctrs. of Tex., Inc. v.
Penalver, 256 S.W.3d 678, 681 (Tex. 2008). 

 The argument complained of by Wilson was brief and did not constitute cumulative
error. Having reviewed the record in its entirety, we conclude that the statements of which
Wilson complains do not constitute incurable jury argument. The jury argument is not so
inflammatory that it strikes at the heart of the adversarial process. See Knight v. E. Tex. Med.
Ctr., No. 12-05-00250-CV, 2007 WL 431164, at *6 (Tex. App.--Tyler Feb. 9, 2007, no pet.)
(mem. op.). Nor was the argument so prejudicial that it would likely cause a reasonable juror
to agree to a verdict contrary to the verdict he would have agreed to absent the argument. See
id. Assuming it was improper, the jury argument was not incurable. The trial court promptly
provided the jury with a limiting instruction. We overrule issue three. 

ADMISSION OF HEARSAY



 In issue four, Wilson argues that the trial court abused its discretion by admitting
prejudicial, cumulative, hearsay statements. 

 On direct examination, the State asked Dr. Hamilton whether he had an opportunity
to review information regarding Wilson's sexual convictions. Dr. Hamilton testified that he
had reviewed that information and that there were particular facts related to the offenses
which were relevant in his determination of whether Wilson has a behavioral abnormality. 
When the State's Counsel asked Dr. Hamilton to list the facts related to Wilson's first sexual
conviction that Dr. Hamilton found most important in formulating his opinion, Wilson's
counsel objected "[t]o the hearsay nature of the facts of the convictions." The court
overruled the objection. Wilson's counsel also objected to the relevance and prejudicial
nature of the facts of the convictions, and the court overruled the objection. When Dr.
Hamilton was asked what facts related to Wilson's second sexual conviction were used as
an underlying basis for his opinion, Wilson's counsel again objected to testimony regarding
the facts of the offenses "on the basis that this information is hearsay." The court overruled
the objection, and sua sponte instructed the jury as follows:

 [T]he information you are hearing about these alleged prior incidents these are
matters that the doctor, as you have realized by now, has picked up by reading
and reviewing certain history; and I'm letting in that evidence even though it's
hearsay because the doctor has said that it aids him in forming an opinion in
this case. So that's why I'm letting it in. I'm not letting it in for the truth of
it, and you are instructed that you won't consider it for the truth of the matter
asserted, but you will simply realize that what the doctor is saying is that this
information that was presented to him he read, digested, and if he felt like it
was relevant and significant in forming his opinion. Then I'm going to permit
him to so testify. It's kind of a confusing instruction, but I'm asking that you
only consider it for the purpose of underlying information making the basis for
the expert opinion. You may proceed. 


Thereafter, the court granted Wilson's counsel's request for a continuing objection to the
hearsay nature of the facts of Wilson's convictions. 

 Dr. Hamilton was later questioned by the State's counsel regarding whether he found
anything in the records regarding whether Wilson admitted to having more victims than those
involved in the offenses for which he was convicted. Dr. Hamilton testified that according
to the records, Wilson had admitted to having additional victims. Dr. Hamilton further
testified that this was relevant to his diagnosis of pedophilia. Wilson's counsel objected on
the basis that this information was not relevant and was more prejudicial than probative. The
court overruled the objection. (2) 

 Likewise, during Wilson's deposition testimony, Wilson was asked whether he had
victims in addition to those victims he was convicted of offending. Counsel objected and
asserted Wilson's Fifth Amendment privilege; however, the judge denied that objection and
Wilson answered the question. Wilson admitted to victims in addition to those for which he
was convicted. When Wilson's deposition was played for the jury at trial, Wilson's counsel
reiterated his objections based on Wilson's Fifth Amendment privilege and his assertion that
the probative value of Wilson's testimony as to additional victims was outweighed by its
prejudicial nature. The court overruled both objections. 

 Finally, Wilson's counsel objected to the hearsay nature of the facts of Wilson's
convictions during Dr. Bailey's testimony. The court overruled the objection, and Wilson
asked for a limiting instruction. The court reminded the jury of its prior limiting instruction
and stated that "the same instruction would apply here as it did then." 

 Wilson argues that the trial court abused its discretion in admitting the factual bases
for Wilson's prior convictions and the fact that Wilson had "other victims" because the unfair
prejudice presented by these facts substantially outweighed their probative value. In
addition, Wilson argues that the limiting instruction "could not possibly cure the harm caused
by admitting the prejudicial, cumulative hearsay testimony of the expert witnesses on the
factual bases of Wilson's convictions and his other victims." 

 The admission of evidence is reviewed under an abuse of discretion standard. In re
Commitment of Salazar, No. 09-07-345 CV, 2008 WL 4998273, at *2 (Tex. App.--Beaumont
Nov. 26, 2008, pet. denied) (mem. op.). A judgment will not be reversed based on the
admission of evidence unless the appellant establishes that the trial court's ruling was in error
and that the error was reasonably calculated to cause and probably did cause the rendition of
an improper judgment. Id. Pursuant to Rule 705 of the Texas Rules of Evidence, an expert
may disclose on direct examination, or be required to disclose on cross-examination, the
underlying facts or data on which he bases his opinion. Tex. R. Evid. 705(a); In re
Commitment of Yaw, No. 09-08-042 CV, 2008 WL 5096511, at *1 (Tex. App.--Beaumont
Dec. 4, 2008, no pet.) (mem. op.). Rule 705(d) provides as follows:

 (d) Balancing test; limiting instructions. When the underlying facts or data
would be inadmissible in evidence, the court shall exclude the underlying facts
or data if the danger that they will be used for a purpose other than as
explanation or support for the expert's opinion outweighs their value as
explanation or support or are unfairly prejudicial. If otherwise inadmissible
facts or data are disclosed before the jury, a limiting instruction by the court
shall be given upon request. 


Tex. R. Evid. 705(d). "When an expert relies upon hearsay in forming his opinion, and it is
of a type reasonably relied upon by such experts, the jury is generally permitted to hear it." 
Salazar, 2008 WL 4998273, at *4. Rule 705(d) makes clear that inadmissible evidence relied
upon by an expert should be excluded only if the danger that it will be used for a purpose
other than as explanation or support for the expert's opinion outweighs its value as
explanation or support or is unfairly prejudicial. Tex. R. Evid. 705(d); see also Salazar,
2008 WL 4998273, at *4. "The rule further provides for the use of a limiting instruction by
the court to ensure that otherwise inadmissible evidence is not improperly used by the jury." 
Salazar, 2008 WL 4998273, at *4.

 Dr. Hamilton and Dr. Bailey both testified that certain facts related to Wilson's
convictions were relevant in their assessments of whether Wilson has a behavioral
abnormality. Both experts explained which facts, related to each offense, they found to be
relevant and how such facts played a role in their assessments. The jury also heard evidence
from Wilson regarding certain facts related to his convictions during his deposition
testimony. Wilson did not object to the limiting instruction provided by the Court in
response to counsel's hearsay objections, nor does the record reflect that he requested a
different instruction. See Yaw, 2008 WL 5096511, at *3. We presume the jury followed the
court's limiting instruction with regard to the hearsay nature of the testimony. See id. 

 Dr. Hamilton and Dr. Bailey also testified that the fact that Wilson admitted to having
victims in addition to those for which he was convicted was likewise relevant to their
assessment of whether he had a behavioral abnormality. (3) Significantly, the facts related to
Wilson's offenses against these additional victims were not admitted into evidence. The only
evidence presented to the jury in this regard was the fact that Wilson admitted to having
additional victims. 

 Wilson did not object at trial that the underlying facts or data provided an insufficient
basis for the experts opinions. See id.; see also Tex. R. Evid. 705. On the record before us,
we conclude the trial court acted within its discretion in concluding that the underlying facts
of Wilson's convictions, and the fact that he had additional victims, were not unfairly
prejudicial, and that the danger of improper use did not outweigh their value as explanation
or support for the experts' opinions. See id. We overrule issue four. Having overruled all
issues on appeal, we affirm the judgment of the trial court.

 AFFIRMED. 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on May 26, 2009

Opinion Delivered August 27, 2009


Before McKeithen, C.J., Gaultney and Kreger, JJ.



1. "The trial court acts as a gatekeeper to screen out unreliable expert evidence." In re
Commitment of Martinez, No. 09-05-493 CV, 2006 WL 2439752, at *1 (Tex. App.--Beaumont Aug. 24, 2006, no pet.). To preserve a complaint that expert testimony is
unreliable and constitutes no evidence, a party must object before trial or when the evidence
is offered. Id. Wilson did not object to the reliability of the expert testimony at trial. 
Because Wilson did not object at trial to the testimony of Dr. Hamilton or Dr. Bailey, he
waived review of his complaint that such testimony is not reliable. See id. 
2. Wilson's counsel also objected based on Wilson's Fifth Amendment privilege to
testimony regarding unconvicted charges. The court overruled the objection. Wilson has not
raised an issue on appeal regarding the assertion of his Fifth Amendment privilege. 
3. Dr. Hamilton testified that this was relevant to his diagnosis of pedophilia, and Dr.
Bailey testified that having a substantial number of victims put Wilson in a "higher risk
group."