In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00371-CV


____________________



IN RE COMMITMENT OF ROBERT BEASLEY






On Appeal from the 435th District Court


Montgomery County, Texas


Trial Cause No. 07-12-12533-CV






 MEMORANDUM OPINION


 The State filed a petition seeking an involuntary civil commitment of Robert Beasley 
as a sexually violent predator. See Tex. Health & Safety Code Ann. §§ 841.001-.150
(Vernon 2003 & Supp. 2009) (referred to as the "Act"). The jury found that Beasley was a
sexually violent predator ("SVP"), and Beasley appeals from the trial court's final judgment
and order of civil commitment. See Tex. Health & Safety Code Ann. § 841.003 (Vernon
2003). In four appellate issues, Beasley contends: 1) the evidence is legally insufficient to
support the jury's verdict, 2) the evidence is factually insufficient to support the jury's
verdict, 3) the trial court erred in denying his motion for directed verdict, and 4) the trial
court erred in failing to submit an instruction that specifically placed the burden of proof on
the State. After reviewing the trial testimony and the jury charge, we find that legally and
factually sufficient evidence supports the jury's verdict. We further find that Beasley waived
his complaint with respect to his motion for directed verdict, and we also hold the court's
charge properly placed the burden of proof on the State. Therefore, we affirm the trial
court's judgment.

Legal Sufficiency


 The SVP statute defines "sexually violent predator" as a person who "(1) is a repeat
sexually violent offender; and (2) suffers from a behavioral abnormality that makes the
person likely to engage in a predatory act of sexual violence." Id. § 841.003(a). (1) As to the
first requirement, Beasley admitted at trial that he had been previously convicted of two
sexual assault offenses. As to the second prong, the State offered expert witness testimony
to prove its elements.

 In issue one, Beasley argues the evidence is legally insufficient because the testimony
of the State's two expert witnesses, Dr. Timothy Proctor and Dr. Michael Arambula, is
speculative and conclusory, and because Dr. Proctor and Dr. Arambula, during trial, "both
admitted that there was no evidence that [Beasley] has urges to engage in sexual acts with
anyone other than his wife."

 Beasley does not contend that he objected to the foundational data of the State's two
experts prior to their testifying before the jury. Instead, 
Beasley argues that analytic gaps in
the experts' respective opinions, apparent on the face of the record, prevent a reviewing court
from giving probative value to opinion-evidence of the State's expert witnesses. See Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232-33 (Tex. 2004)
. 

 The Texas Supreme Court recently explained that "conclusory opinions are legally
insufficient evidence to support a judgment even if the party did not object to the admission
of the testimony." City of San Antonio v. Pollock, 284 S.W.3d 809, 816 (Tex. 2009) (citing
Coastal Transp. Co.,136 S.W.3d at 232). If there is no reliable basis offered for the expert's
opinion, the opinion has no weight as probative evidence. Id. at 816-17. If the opinion has
a supporting basis, but there is a reliability challenge that requires the court to evaluate the
underlying methodology, technique, or foundational data, then an objection "must be timely
made so that the trial court has the opportunity to conduct this analysis." Id. at 817 (quoting
Coastal Transp. Co., 136 S.W.3d at 233).

 Much of Beasley's argument in issue one challenges the respective methodologies
of the State's experts, but those objections were not made during trial. To the extent that
Beasley's complaints concern the reliability of the opinions of the State's two experts, which
he raises for the first time on appeal, his objections are not properly preserved. See id. 
However, to completely address Beasley's legal sufficiency challenge, we must also review
the record, including the experts' methodologies, to determine if Beasley has demonstrated
that analytical gaps in the opinions of Dr. Arambula and Dr. Proctor deprive their respective
opinions of probative value. 

 Chapter 841 of the Act requires the State to prove beyond a reasonable doubt that a
person is a sexually violent predator. See Tex. Health & Safety Code Ann. § 841.062(a)
(Vernon 2003). Consequently, although this is a civil case, we review legal sufficiency
issues on appeal by the criminal standard of review. In re Commitment of Gollihar, 224
S.W.3d 843, 846 (Tex. App.-Beaumont 2007, no pet.); In re Commitment of Mullens, 92
S.W.3d 881, 885 (Tex. App.-Beaumont 2002, pet. denied) (citing Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We review the evidence to decide if
a rational jury could have found beyond a reasonable doubt that Beasley suffers from a
behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. 
See In re Commitment of Mullens, 92 S.W.3d at 887.

 Both of the State's experts explained the methodology they employed to arrive at their
respective opinions. They examined records and an evaluation packet prepared by the sex
offender treatment program. Both examined historical records regarding Beasley's offenses,
and reviewed Beasley's prison disciplinary history. Dr. Proctor administered risk assessment
instruments and actuarial tests, and Dr. Arambula also reviewed those tests. Additionally,
each of the State's expert witnesses interviewed Beasley.

 Dr. Proctor, a forensic psychologist, performed two actuarial tests on Beasley. One
was the "Static 99," which is used to measure the risk of sexual recidivism; the other was the
"Minnesota Sex Offenders Screening Tool, Revised" (MnSOST-R), which is also used to
predict the risk of future sexual offenses. Dr. Proctor scored Beasley with a "4" on the Static
99, which places Beasley in the "moderate high range of future risk." On the MnSOST-R,
Dr. Proctor scored Beasley with a "6," which he explained places Beasley at a moderate risk
of recidivism. Dr. Proctor diagnosed Beasley as having "pedophilia, attracted to females,
nonexclusive" and as having an "antisocial personality disorder, including the presence of
psychopathy." Dr. Proctor concluded that Beasley has a behavioral abnormality that
predisposes him to engage in predatory acts of sexual violence.

 Dr. Arambula, a psychiatrist who is board certified in forensic psychiatry, diagnosed
Beasley as having pedophilia and an antisocial personality disorder. He identified several
factors that affected Beasley's chances of reoffending, including: 1) Beasley's underlying
pedophilia and antisocial personality disorder, 2) his substance abuse, and 3) his pre-trial
denial of having committed two prior sexual assault offenses. Dr. Arambula concluded that
Beasley has a behavioral abnormality that predisposes him to engage in a predatory act of
sexual violence, and that Beasley was at risk of reoffending. Dr. Arambula also testified that
pedophilia does not go away without treatment.

 Beasley's expert witness, Dr. Anna Shursen, followed a similar methodology in
forming her own opinion about Beasley's risk of reoffending. Dr. Shursen is a licensed
professional counselor and licensed sex offender treatment provider. In her evaluation of
Beasley, Dr. Shursen used the same basic information and the same two actuarial assessment
instruments that were used by the State's experts. Dr. Shursen's conclusions, however,
differed from those reached by the State's experts. Dr. Shursen did not feel that Beasley met
the criteria for a diagnosis of pedophilia because he had not "persistently sought out
children"[;] thus, according to Dr. Shursen, Beasley is not a pedophile. Dr. Shursen scored
Beasley with a "2" on the Static 99, which she said was a "moderate low" risk category. She
gave Beasley a lower Static 99 score compared to Dr. Proctor because her opinion differed
about Beasley's history of long-term relationships with women, and that difference allowed
her to score Beasley differently on one part of the test. Additionally, she scored Beasley
differently than Dr. Proctor because she discounted certain juvenile offenses because of lack
of information. In contrast, Dr. Proctor had considered them in his evaluation.

 Dr. Shursen also tested Beasley on an MnSOST-R, and initially gave Beasley a score
of "2" on that actuarial. After obtaining additional information about the ages of the two
children that Beasley had sexually assaulted, Dr. Shursen changed Beasley's score to a "5." 
Based on a score of "5," Dr. Shursen described Beasley's risk of recidivism within the next
six years as being "moderate and 45 percent." Ultimately, when asked about Beasley's risk
of sexually reoffending, Dr. Shursen stated: "I think it's low." Although Dr. Shursen stated
that she agreed that Beasley had an antisocial personality disorder, she concluded that
Beasley did not have a behavioral abnormality that made him likely to engage in future
predatory acts of sexual violence.

 After examining the methodologies employed by the various experts who offered
opinions on Beasley's personality and risk of recidivism, the record demonstrates that all of
the experts followed similar methodologies. Each expert reviewed the information in
Beasley's prison records and interviewed him. All of the experts utilized, to some degree,
information they obtained from Beasley's actuarial assessment tests. As a result, we
conclude that all of the experts had support for their respective opinions, even though their
opinions differed. 

 While Beasley contends that the State's experts relied on "stale data" and failed to
properly consider Beasley's claim that he no longer suffers from sexual fantasies involving
children, the respective experts each possessed that information and considered and weighed
it in forming their respective opinions. The fact that each may have weighed the information
differently does not demonstrate that an analytic gap exists in an expert's testimony, nor does
it render the evidence supporting the verdict to be without any probative value. In summary,
Beasley's complaints actually address his concerns about the reliability of the respective
expert's opinions, and consequently these complaints should have been presented to the trial
court in a manner that would have allowed the trial court to address the foundational data
used by the experts. Nevertheless, we conclude that from the evidence before it a rational
jury could have found beyond a reasonable doubt that Beasley suffers from a behavioral
abnormality that predisposes him to commit a predatory act of sexual violence. The evidence
is therefore legally sufficient to support the jury's verdict. We overrule issue one. 

Factual Sufficiency


 Issue two contends the evidence is factually insufficient because Beasley reported to
the State's experts that he has no "urges or fantasies about victimizing others by engaging
in non-consensual sexual acts," and because the State's two experts' opinions - that Beasley
has a behavioral abnormality - lacked probative value. With respect to a factual sufficiency
review, we apply the factual sufficiency standard that is applied to criminal cases. In re
Commitment of Gollihar, 224 S.W.3d at 846. In reviewing a criminal appeal for factual
sufficiency, we view all of the evidence in a neutral light and ask whether a jury was
rationally justified in finding guilt beyond a reasonable doubt. See Watson v. State, 204
S.W.3d 404, 415 (Tex. Crim. App. 2006). To reverse a case on a factual sufficiency
challenge, we must be able to say that the verdict is against the great weight and
preponderance of the evidence or that the verdict is clearly wrong or manifestly unjust. See
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (citing Watson, 204 S.W.3d
at 414-5).

 Beasley reasserts in issue two his argument that the expert testimony is conclusory and
speculative and analytic gaps deprive the respective expert opinions of probative value. For
the same reasons we have explained in issue one, we disagree. Reviewing the record in a
neutral light, it demonstrates that in 1992, Beasley pled guilty to committing aggravated
sexual assault against two different children; he did not participate in sex offender treatment
while in prison; and he has been in prison for the vast majority of the time between 1989 and
the date of trial. (2) Additionally, the record shows that a forensic psychologist interviewed
Beasley in 2007. The forensic psychologist later diagnosed him as a pedophile and testified
that Beasley has a behavioral abnormality that predisposes him to engage in predatory acts
of sexual violence. In 2008, Beasley was also seen by a forensic psychiatrist, who expressed
the opinion that Beasley is a pedophile, has an antisocial personality disorder, and has a
behavioral abnormality that predisposes him to engage in a predatory act of sexual violence. 
While there is also evidence elicited from Beasley's expert that Beasley was not a pedophile,
that issue was disputed.

 In this case, the opposing parties offered the jury competing opinions by experts in
order to assist the jury in its resolution of whether Beasley suffered from a behavioral
abnormality that predisposes him to engage in a predatory act of sexual violence. In criminal
cases, determinations about the credibility of each witness and about whether to believe or
disbelieve any portion of a witness's testimony are left to the jury. Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999); Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986). Generally, in resolving differences that exist between inferences raised by
evidence in a trial, the jury is permitted to draw reasonable inferences from basic facts to
ultimate facts. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). When a jury
is faced with conflicting testimony, we presume it resolved the conflict in favor of the
prevailing party. Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Similarly, in
civil cases, a jury presented with conflicting evidence has several choices, including the
following:

 It may believe one witness and disbelieve others. Ford v. Panhandle & Santa
Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561 (1952). It may resolve
inconsistencies in the testimony of any witness. Benoit v. Wilson, 150 Tex.
273, 239 S.W.2d 792 (1951). It may accept lay testimony over that of experts. 
Muro v. Houston Fire & Casualty Ins. Co., 329 S.W.2d 326 (Tex. Civ.
App.-San Antonio 1959, writ ref'd n.r.e.).


McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986). "In a battle of competing
experts, it is the sole obligation of the jury to determine the credibility of the witnesses and
to weigh their testimony." Morrell v. Finke, 184 S.W.3d 257, 282 (Tex. App.-Fort Worth
2005, pet. denied). In this case, in addition to expert opinions, the jury was also provided 
significant information about Beasley's past behavior. That information, although largely
based on Beasley's limited period of freedom, exists independently from the expert's
respective opinions and provides additional support for the jury's resolution of the disputed
issues. 

 Beasley also argues that the State's two experts admitted they had no evidence that
Beasley currently has urges or fantasies about victimizing others by engaging in non-consensual sexual acts and he contends that these admissions create a factual sufficiency
problem that undermines the jury's verdict. Our review of the record, however, does not
show that the State's experts admitted that Beasley did not have inappropriate sexual
fantasies; instead, the record simply shows that the State's experts both acknowledged
Beasley's statement that he had very few sexual fantasies and that the ones he did have were
related to his wife. Dr. Proctor expressed skepticism about Beasley's report regarding both
the frequency and nature of his sexual fantasies. Although aware that Beasley reported he
was not currently experiencing sexual fantasies with children, Dr. Arambula maintained that
pedophilia does not go away without treatment and concluded that Beasley suffered from the
condition as of the date of the trial. Therefore, we do not agree with Beasley that the State's
experts admitted that Beasley's self-reported history established as a matter of fact that he
no longer suffered from inappropriate sexual fantasies. In evaluating the credibility of
Beasley's self-report about his thoughts, the experts could rely upon their own education and
experience in patient populations diagnosed with similar problems; therefore, the expert
witnesses are entitled to give no weight to Beasley's report about his current sexual fantasy
experiences.

 Without citation to appropriate legal authorities, Beasley also complains that the 
opinions of the State's experts were not based upon a beyond-reasonable-doubt standard. 
Beasley then concludes that as a result, the State failed to meet its burden of proof. Without
any substantive analysis to explain why the jury would be misled by the admission of expert
witness testimony that employs a medical probability standard when the proper standard is
stated in the jury charge, the argument is inadequately briefed. See Tex. R. App. P. 38.1(i)
("The brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record."); see also Fredonia State Bank v. Gen.
Am. Life Ins. Co., 881 S.W.2d 279, 284-85 (Tex. 1994) (stating that error may be waived by
inadequate briefing). Additionally, Beasley lodged no objection to the standard used by the
experts when they expressed their respective opinions during the trial. Beasley's
argument-that the State's experts used an improper proof standard-was both not preserved
at trial and waived by the failure to adequately brief the argument on appeal. See Tex. R.
App. P. 33.1(a)(1), 38.1(i). 

 Having considered Beasley's arguments, and having reviewed the record in a neutral
light, we conclude that the record is factually sufficient to support the jury's verdict. We
hold that the jury's verdict is not against the great weight and preponderance of the evidence. 
Issue two is overruled.

Ruling on Motion for Directed Verdict


 In issue three, Beasley argues that the trial court erred in denying his motion for
directed verdict. However, in his reply brief, Beasley expressly waived his complaint about
the error he asserts in issue three. Therefore, we do not consider it. Tex. R. App. P. 47.1.

Charge Error


 In issue four, Beasley asserts that there was error in the jury charge because "the
charge submitted [by the trial court] lacked sufficient information to apprise the jury that [the
State] had the burden of proof on all issues in this case." Beasley notes that he requested an
instruction that stated: "The State must prove all elements of this case beyond a reasonable
doubt." The trial court marked Beasley's requested instructions as "refused."

 Nonetheless, the charge submitted by the trial court placed the burden on the State by 
stating the question as follows: "Do you find beyond a reasonable doubt that Robert Beasley
suffers from a behavioral abnormality that predisposes him to engage in a predatory act of
sexual violence?" Thus, Beasley's complaint is that the charge is not sufficiently specific in
the placement of the burden of proof. 

 While Beasley acknowledges that the charge "stated" the burden of proof, he argues
that the charge was nevertheless deficient because it did not contain any language "placing"
the burden of proof on the State. The State points out that Beasley did not specifically object
to the absence of the burden of proof instructions in the admonitory instructions of the
charge. Based on Beasley's failure to object during the charge conference, the State asserts
that Beasley waived any objection to the trial court's alleged failure to properly place the
burden of proof on the State. 

 We do not agree that Beasley did not properly preserve his complaint for our review.
Rule 276 provides that a submitted instruction, marked by the trial court as having been
"refused," requires us to conclusively presume on appeal that:

 the party asking the same presented it at the proper time, excepted to its refusal
or modification, and that all the requirements of law have been observed, and
such procedure shall entitle the party requesting the same to have the action of
the trial judge thereon reviewed without preparing a formal bill of exceptions. 


Tex. R. Civ. P. 276. In this case, the record reflects that the trial court marked Beasley's
proposed jury instructions as "refused." Therefore, Beasley benefits from a conclusive
presumption that the variance between his proposed instructions and those in the charge
submitted were timely and specifically brought to the trial court's attention. Id. 

 We hold that Beasley's complaint concerning whether the charge properly placed the
burden of proof on the State was sufficiently preserved for the purpose of allowing us to
review it on appeal. See Galveston County Fair & Rodeo, Inc. v. Glover, 940 S.W.2d 585,
586-87 (Tex. 1996) (relying on separate written request that complied with Rule 273 to reach
the conclusion that error had been preserved for appeal); State Dep't of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 241 n.5 (Tex. 1992) (op. on reh'g) (noting that a written
request for an element of a claim in substantially correct form would preserve error for
purposes of appeal). Therefore, we address Beasley's argument that the jury was not given
proper guidance on placing the burden of proof on the State. 

 With respect to placing the burden of proof, Rule 277 of the Texas Rules of Civil
Procedure provides that "[t]he placing of the burden of proof may be accomplished by
instructions rather than by inclusion in the question." Tex. R. Civ. P. 277. Thus, the Rules
of Civil Procedure contemplate that the jury can be instructed about applying the burden of
proof in one of two ways: an admonitory instruction or by placement of the burden through
the question.

 In this case, by the way the question was phrased for the jury, the charge placed the
burden of proof on the State. An affirmative answer to the issue necessarily required the
State to prove, beyond a reasonable doubt, that Beasley suffers from a behavioral
abnormality. An affirmative answer to the question also required the jury to find that the
evidence demonstrated, beyond a reasonable doubt, that the abnormality predisposed Beasley
to engage in a predatory act of sexual violence. By submitting an issue that properly placed
the burden on the party that bore it, the trial court acted consistently with the Rules of Civil
Procedure. 

 We hold that by wording the issue in the manner used in this jury charge, the trial
court properly placed the burden of proof on the State. Having overruled each of the issues
Beasley asserts in his appeal, we affirm the judgment and order of civil commitment. 

 AFFIRMED. 

 __________________________________

 HOLLIS HORTON

 Justice



Submitted on August 6, 2009

Opinion Delivered November 12, 2009 

Before McKeithen, C.J., Kreger and Horton, JJ.

1. The Act defines "behavioral abnormality" as "a congenital or acquired condition that,
by affecting a person's emotional or volitional capacity, predisposes the person to commit a
sexually violent offense, to the extent that the person becomes a menace to the health and
safety of another person." Tex. Health & Safety Code Ann. § 841.002(2) (Vernon Supp.
2009).
2. According to Beasley, he was not in prison for ten days in 1992.