**In re COMMITMENT OF James GOLLIHAR.**

**No. 09-06-243 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Feb. 8, 2007.

Decided May 17, 2007.

Bob Mabry, Kelly Gatewood, State Counsels for Offenders, Huntsville, for appellant.

Kerrie Hergenrader, Joey Robertson, Special Prosecutions Unit–Civil Division, Huntsville, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

The Civil Commitment of Sexually Violent Predators Act ("Act")[1] provides for the involuntary civil commitment of an offender to outpatient treatment and supervision if the offender is found to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.081 (Vernon Supp.2006).[2] A jury determined that

---

1. The Civil Commitment of Sexually Violent Predators Act is located in Title 11, Chapter 841 of the Texas Health and Safety Code. *See* Tex. Health & Safety Code Ann. §§ 841.001–841.150(Vernon 2003 & Supp.2006).

2. In addition, the statute requires the trial court to conduct a biennial review of the status of committed persons and to set a hearing if (1) the court determines that the requirements imposed on the sexually violent predator should be changed, or (2) probable cause exists to show that the person is no longer likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.102 (Vernon 2003).

James Gollihar was a sexually violent predator under Texas law by finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.003 (Vernon 2003). Gollihar challenges the legal and factual sufficiency of the evidence establishing that he is likely to engage in a future predatory act of sexual violence. He also challenges the reliability of the testimony of Dr. Sheri Gaines, the State's expert witness. We affirm the trial court's judgment and order of civil commitment.

Issue One: Legal and Factual Sufficiency

█ In issue one, Gollihar challenges the legal and factual sufficiency of the evidence supporting the jury's verdict. Under the Act, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. *See id.* § 841.062 (Vernon 2003). Because the statute employs a beyond-a-reasonable-doubt-standard, on appeal we review legal sufficiency issues by the standard of review applied in criminal cases for legal sufficiency of the evidence. *See In re Commitment of Mullens,* 92 S.W.3d 881, 885 (Tex.App.-Beaumont 2002, pet. denied) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). To test the legal sufficiency of the evidence that supports an affirmative jury finding, we review all of the evidence in a light most favorable to the verdict. *See id.* In this case, we review the evidence at trial to decide if a rational jury could have found beyond a reasonable doubt that Gollihar suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* at 887.

█ With respect to our factual sufficiency review, we apply the factual sufficiency standard applied in criminal cases. In a factual sufficiency review, we view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State,* 204 S.W.3d 404, 415(Tex.Crim.App.2006). To reverse a case on a factual sufficiency challenge, we must be able to say that the great weight and preponderance of the evidence contradicts the jury's verdict or that the verdict is clearly wrong or manifestly unjust. *See Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006) (citing *Watson,* 204 S.W.3d at 414–15).

*Evidence*

Gollihar's first issue asserts the State's evidence fails to establish that he is likely to reoffend.[3] During the trial, the State offered the testimony of James Gollihar, Sheri Gaines, M.D., and Antoinette McGarrahan, Ph.D. The trial court also admitted other evidence: Gollihar's pen packet and his answers to requests for admission.

Dr. Sheri Gaines, a board-certified psychiatrist, testified that she met with Gollihar in January 2006 and interviewed him to evaluate whether he had a behavioral abnormality making him likely to reoffend. In reaching her opinion, Dr. Gaines reviewed the offense reports, victim statements, the records from Gollihar's sex offender treatment program, his education records, and his medical records. During the interview with Dr. Gaines, Gollihar related that one month prior to the interview he had a fantasy about a sexual en-

---

**3.** To establish that a person is a sexually violent predator, the State must show that the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code Ann. § 841.003 (Vernon 2003). Gollihar does not contest the State's evidence showing that he is a repeat sexually violent offender.

counter with a minor female. Gollihar also told Dr. Gaines that he could not say that he would not reoffend. Based upon her interview of Gollihar and his records, Dr. Gaines diagnosed him as suffering from pedophilia. She also testified that, in her opinion, Gollihar has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, and she specifically stated that Gollihar is "highly likely to reoffend sexually on a child, on a female child." When she offered this opinion during trial, Gollihar's attorney made no objection.

The State also called Dr. Antoinette McGarrahan, a psychologist. Dr. McGarrahan interviewed Gollihar and administered two psychological tests, the MnSOST–R and the Static '99. Dr. McGarrahan testified that Gollihar's test results placed him in a group with the following recidivism rates: nine percent, five years after release; thirteen percent, ten years after release; and sixteen percent, fifteen years after release.[4] During his interview, Gollihar related to Dr. McGarrahan that two days prior to the interview he had a fantasy about a child. Dr. McGarrahan testified that she would slightly increase Gollihar's risk and, thus, would classify it as moderate "due to recent fantasies [associated with] masturbation of children." The State also introduced portions of Gollihar's deposition testimony. There, he ad-

mitted to a 1987 incident that resulted in his conviction for indecency with a child by contact. Gollihar also testified that he had been convicted for aggravated sexual assault of a child related to an incident in 1990. Gollihar testified that his sexual conduct with his victim in 1990 occurred up to three times per week over an eight month time period. In addition, Gollihar testified that before his imprisonment he had engaged in improper relations with children other than the two children involved in the 1987 and 1990 incidents. Gollihar denied knowing how many children he had victimized.

During the State's presentation of its case, the trial court admitted several of Gollihar's answers to requests for admission. Among these answers, Gollihar admitted that he suffers from a behavioral affliction that causes him to sexually abuse children.

Gollihar was the sole witness called to testify in his defense. During his testimony, Gollihar related that he entered a sexual abuse therapy program in January 2006. At the time of trial, Gollihar testified that he had completed phase one and was entering phase three. Gollihar did not mention whether he had successfully completed phase two. During his cross-examination, Gollihar testified that he gave

---

4. From the record, we are unable to determine the measure used in the recidivism statistics cited by Dr. McGarrahan. Specifically, we cannot tell whether her testimony was intended to demonstrate an offender's risk of being convicted of additional sex crimes; or, whether her statistics included reoffenders who were convicted as well as those who were not convicted of additional offenses. With respect to recidivism statistics, one commentator noted:

Recidivism can be defined in several ways, and recidivism rates are naturally a function of the definition adopted. Most recidivism studies use reconviction as the outcome

measure. This has two problems: First, sex offenses have very low reporting rates (significantly lower than other offenses) and a reconviction measure does not capture unreported sex offenses. Second, even amongst the reported sex offenses, many offenses are plea-bargained down to non-sexual offenses (such as assault). On account of both these factors, it is often argued that reconviction is not a good measure of sex offender recidivism.

Aman Ahluwalia, *Civil Commitment of Sexually Violent Predators: The Search for A Limiting Principle*, 4 Cardozo Pub.L. Pol'y & Ethics J. 489, 525 (2006) (footnote omitted).

a written statement during 2006 in which he said: "I have a thing about younger women and little girls.... I know I have this problem." At the time of his 2006 trial, Gollihar was 65 years of age.

### Application of Law to Facts

■ At the outset, we note that a jury is entitled to make reasonable inferences from basic facts to determine ultimate fact issues. *Lacour v. State*, 8 S.W.3d 670, 671 (Tex.Crim.App.2000). The jury judges the credibility of the witnesses and the weight to accord their testimony. *See Barnes v. State*, 876 S.W.2d 316, 321(Tex.Crim.App.1994); *Mullens*, 92 S.W.3d at 887.

In this case, Dr. Gaines diagnosed Gollihar with pedophilia. This Court has previously recognized that mental health professionals consider pedophilia a serious mental disorder. *Mullens*, 92 S.W.3d at 885 (citing *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 871, 151 L.Ed.2d 856 (2002) and *Kansas v. Hendricks*, 521 U.S. 346, 360, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). In *Crane*, the U.S. Supreme Court referred to pedophilia as "a mental abnormality that critically involves what a lay person might describe as a lack of control. DSM–IV 571–572 (listing as a diagnostic criterion for pedophilia that an individual have acted on, or been affected by, 'sexual urges' toward children)." *Crane*, 534 U.S. at 414, 122 S.Ct. 867. Here, Dr. Gaines's diagnosis of pedophilia is uncontradicted by any other diagnosis. Additionally, no witness testified that Gollihar's underlying condition had been cured or that he did not have ongoing symptoms consistent with the condition.

### Likely to Reoffend

■ Gollihar's principal argument attacks the sufficiency of the evidence that he will likely reoffend. He relies heavily on Dr. McGarrahan's classification of his recidivism risk as moderate. Because he likely viewed this opinion as favorable to his case, Gollihar made no pretrial challenges to Dr. McGarrahan's testimony. However, during the trial, Dr. McGarrahan also related that Gollihar described his recent sexual fantasy involving a child and explained that his test scores are consistent with a sixteen percent recidivism rate. While Dr. McGarrahan characterized Gollihar's test score results as showing a low-to-moderate risk, she also said she would adjust Gollihar's risk slightly upwards "due to recent fantasies and masturbation of children." But, Dr. McGarrahan offered her opinion during the trial that "Mr. Gollihar did not meet the statutory criteria as a sexually violent predator" and that he was not likely to reoffend in a sexually violent manner.

Dr. McGarrahan's testimony, however, was not the only evidence addressing the risk that Gollihar might reoffend. Dr. Gaines, a board-certified psychiatrist, characterized this risk in Gollihar's case as "highly likely." In addition to the testimony of the two experts, the jury also was entitled to consider Gollihar's testimony that he continued to fantasize about minor children and that he had not completed therapy. Gollihar also gave no indication of any treatment plans following his release from prison.

■ When the record contains disputed testimony, "[t]he jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim.App.2000). More recently, the Texas Supreme Court explained: "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one

witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex.2005) (footnotes omitted).

Gollihar asserts that Dr. McGarrahan's opinion shows "there is hardly any likelihood that he is going to reoffend at all." We disagree. Although Dr. McGarrahan's opinion was that Gollihar was not likely to reoffend, her testing was consistent with the State's contention that he carried a significant objective risk of reoffending. In our opinion, Dr. McGarrahan's test results, when considered along with his recent sexual fantasies involving children, tend to support the jury's conclusion that Gollihar posed a serious and well-founded risk of reoffending. *See Crane,* 534 U.S. at 413, 122 S.Ct. 867 ("It is enough to say that there must be proof of serious difficulty in controlling behavior."). Therefore, Dr. McGarrahan's testimony, when viewed as a whole, does not contradict the jury's finding. *See id.* ("[T]he Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules.").

Our review of the record finds fact witness testimony, expert witness testimony, and exhibits from which reasonable jurors could conclude that Gollihar suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. His history, both recent and past, is consistent with a conclusion that he has serious difficulty controlling his behavior. Having carefully reviewed the record, we find the evidence legally sufficient to support the jury's finding. We also find the evidence factually sufficient under the relevant factual sufficiency

standards of review to support the jury's verdict. Issue one is overruled.

Issue Two: Failure to Strike Dr. Gaines

Gollihar's second issue contends the trial court erred in permitting Dr. Gaines to testify that he is highly likely to reoffend. Gollihar premises his second issue on six arguments. First, Gollihar asserts that Dr. Gaines applied a "possibility" standard rather than a "probability" standard in reaching her conclusions. Second, he argues Dr. Gaines failed to demonstrate her competence to testify. Third, Gollihar contends Dr. Gaines applied a meaning of "sexually violent offense" that differs from the statute's definition. Fourth, Gollihar argues that his two previous sex crimes against children are insufficient to support his diagnosis of pedophilia. Fifth, he asserts that Dr. Gaines's opinion about the chance he will reoffend is based solely on her clinical judgment of him and that the State did not prove her clinical judgment was reliable. Finally, Gollihar argues that the alleged error in admitting Dr. Gaines's testimony was harmful to him.[5]

*Expert's Standard*

With respect to the standard Dr. Gaines employed in reaching her opinion, we find that Gollihar did not preserve this complaint for our review. At the pretrial hearing on Gollihar's motion to exclude Dr. Gaines's testimony, she testified:

Q.  And based on your psychiatric assessment of Mr. Gollihar, do you believe he has a behavioral abnormality which makes him likely to engage in predatory acts of sexual violence?

A.  Yes.

Q.  And what is your opinion on that?

---

5.  Because we conclude that the trial court did not err in admitting Dr. Gaines's testimony, we need not consider Gollihar's final argument. *See* Tex.R.App. P. 47.1.

A. My opinion is that Mr. Gollihar has a behavioral abnormality, specifically pedophilia, that makes him likely to reoffend in a sexually violent way.

At the pretrial hearing, Gollihar raised no objection that the expert was applying a "possibility" standard rather than a "probability" standard—the argument he now raises on appeal. At trial, Dr. Gaines also addressed her prediction of the likelihood that Gollihar would reoffend. Dr. Gaines testified as follows:

Q. Dr. Gaines, do you believe that Mr. Gollihar has a behavioral abnormality which makes him likely to engage in predatory acts of sexual violence?

A. Yes, I believe he does.

Later, the State's attorney again asked Dr. Gaines to address the risk that Gollihar would reoffend:

Q. And when you say he is likely to reoffend, is that using the definition of "likely" as "probable" or "beyond a mere possibility"?

A. Yes.

Gollihar did not object that Dr. Gaines's opinion was based on a standard of "merely possible" rather than "likely"—the point he now raises. Further, he did not object to the compound nature of the State's question regarding the standard she used.[6]

With respect to error preservation, the Texas Supreme Court held in *Coastal Transport Co., Inc. v. Crown Central Petroleum Corp.* that an expert-reliability challenge asking the court to examine the expert's underlying methodology, technique, or foundational data, requires a timely objection "so that the trial court has

the opportunity to conduct this analysis." 136 S.W.3d 227, 232–33 (Tex.2004); *accord Guadalupe–Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex.2002); *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409–12 (Tex.1998); *see* Tex.R. Evid.103; Tex.R.App. P. 33.1. Had Gollihar's complaint regarding this question been lodged at trial, rather than on appeal, the trial court could have required Dr. Gaines to identify the definition of "likely" that she used in determining Gollihar is "likely to reoffend."

In our view, Gollihar's complaint—whether Dr. Gaines applied the proper standard to the issue of the likelihood that he would reoffend—concerns the underlying methodology she used to reach the conclusion that he would reoffend. Here, an objection regarding the standard Dr. Gaines applied, or an objection to the compound nature of the question was required to preserve the complaint now made on appeal. *See Coastal Transport*, 136 S.W.3d at 232–33. Because Gollihar made no objections consistent with the complaint he now makes, he waived this argument. *See* Tex.R.App. P. 33.1.

### Expert's Competence

■ Gollihar's second argument under issue two concerns Dr. Gaines's competence as an expert. Gollihar challenged her qualifications in a motion to exclude her testimony. At the pretrial hearing on Gollihar's motion, Dr. Gaines testified that she is a licensed and board—certified psychiatrist with experience interviewing and testifying in this type of civil commitment proceeding. She personally interviewed Gollihar and reviewed his medical records,

---

**6.** In general, where a compound question creates confusion, a party may lodge an objection to the form of the question. *See* Don D. Bush, *Common Objections To the Form of Questions*, 47 Tex. B.J. 996, 1001 (1984); 8

William V. Dorsaneo III, Texas Litigation Guide § 121.101 (2005). The trial court is allowed, upon a party's objection, to control whether such questions are asked or answered. *See generally* Tex.R. Evid. 611(a).

the records of Texas Department of Criminal Justice, sex offender treatment records, education records, and evaluations by other mental health professionals who had examined him.

Gollihar criticizes Dr. Gaines's competence for two reasons. First, Dr. Gaines expressed an opinion that a pedophile with two prior offenses is likely to reoffend. Second, she testified that another psychiatrist could come to conclusions that differ from hers regarding Gollihar's case. However, Gollihar cites no authority for the proposition that these criticisms render Dr. Gaines an incompetent witness or that her opinions are unreliable. In our opinion, Gollihar's criticisms go to the weight that a jury might give Dr. Gaines's testimony, but they do not demonstrate that she was improperly trained, that she was an incompetent psychiatrist, or that her opinion was unreliable.

*Definition of Sexually Violent Offenses*

■ Gollihar's third argument concerns Dr. Gaines's definition for "sexually violent offenses," a term the statute defines. *See* Tex. Health & Safety Code Ann. § 841.002(8) (Vernon Supp.2006).[7] With respect to her understanding of the term "sexually violent offense," Dr. Gaines testified before the jury as follows: ·

Q. Dr. Gaines, what is a "sexually violent offense" under Texas Health and Safety Code Chapter 841?

A. Well, again, I will do my best, without having memorized that and without having that statute in front of me. A sexually violent offense is an offense where someone has perpetrated a sexual act against someone in a violent way for

the purpose of violating them or abusing them.

Gollihar argues an offense need not necessarily be violent in any ordinary sense to be a sexually violent offense as defined by the statute. *See id.* § 841.002(8)(E)(defining "sexually violent offense" as including attempts, conspiracies, or solicitations to commit certain offenses, such as indecency with a child (by contact) under Penal Code section 21.11(a)(1)). While Dr. Gaines's definition of the term is more narrow than the statute's, her definition falls within the ambit of "sexually violent offenses" under the Act. In our opinion, Dr. Gaines's use o a more narrow definition for "sexually violent offense" goes to the weight that a jury might choose to give her testimony.

Further, in this case, Gollihar's pen packet proved that Gollihar, on more than one prior occasion, had been convicted of sexually violent offenses as defined by the Act. *See id.* § 841.002(8)(A); Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021. In his testimony, Gollihar admitted that he had been convicted of these two prior offenses. Under the facts of this case, Gollihar has not demonstrated that Dr. Gaines's definition of a sexually violent offense rendered her opinion unreliable. Despite her more narrow definition, Dr. Gaines's opinion remains of assistance to the jury in determining a fact in issue. *See* Tex.R. Evid. 702. As a result, it was not error for the trial judge to allow Dr. Gaines to testify even though she was unable to quote from memory the precise statutory definition of "sexually violent offense."

*Pedophilia Diagnosis*

Gollihar's fourth argument under issue two attacks Dr. Gaines's diagnosis that he

---

7. The following is a non-exclusive list of Texas Penal Code offenses that are included in the statutory definition of "sexually violent offense": section 21.11(a)(1) (indecency with a child by contact); section 22.011 (sexual as-

sault); section 22.021(aggravated sexual assault). *See* Tex. Health & Safety Code Ann. § 841.002(8)(A) (Vernon Supp.2006); Tex. Pen.Code Ann. §§ 21.11(a)(1), 22.011, 22.021 (Vernon Supp.2006).

is a pedophile. With respect to this claim, Gollihar refers us to Dr. Gaines's trial testimony:

Q. Did not you state, at that time, that anyone who has committed two sexual offenses, "Yes, has a behavioral abnormality that makes them likely to reoffend"?

A. Well, now that, I would have to read my exact words, because my intention was to qualify that the behavioral abnormality is pedophilia.

Q. Okay. I'm going to direct your attention to Page 35 of your deposition, Lines 16 through 21, and have you read that silently and see if that refreshes your recollection.

A. Yes.

Q. All right. And did I quote you accurately?

A. I don't remember, but what I said was behavioral—I mean, two sexual offenses on children. I think that's the key words, "on children."

Q. Isn't it true that under some of the offenses that are sexually violent offense in the statute, those offenses can only be committed against children?

A. Could you repeat the question, please?

Q. Isn't it true—out of the list of sexually violent offenses, isn't it true that some of those offenses can only—that those actions are only criminal if they occur between an adult and a child? Is that a fair statement?

A. Well, I don't really know what document you're referring to; but what you're saying makes sense to me.

The testimony Gollihar cites occurred during Dr. Gaines's cross-examination by Gollihar's attorney. However, Gollihar's argument ignores other support for Dr. Gaines's diagnosis, namely, her interview of him, his admission of current symptoms consistent with pedophilia, and his history of offenses against children for which he was not prosecuted. Thus, it does not appear that Dr. Gaines's pedophilia diagnosis is based solely on Gollihar's two prior convictions, as he asserts. The record does not support his contention.

### Clinical Judgment

■ Gollihar's fifth complaint about Dr. Gaines's testimony contends her opinion was based on unreliable clinical judgment. Gollihar maintains Dr. Gaines's clinical judgment is unreliable for two reasons: first, she used flawed methodology; and, second, there has been no peer review.

### Methodology

Gollihar specifically points to Dr. Gaines's admission that it was possible (although hard for her to imagine) other experts might disagree with her that Gollihar would likely reoffend. Gollihar asserts Dr. Gaines's admission supports his argument that her clinical opinion is unreliable.

Gollihar maintains an expert's admission that others might disagree reveals a flaw in the expert's methodology. However, when Dr. Gaines testified that it was possible other experts might disagree with her conclusion, Gollihar did not move to strike her prior opinion as unreliable. Gollihar also fails to explain why experts following the same methodology in assessing a risk of recidivism should necessarily reach the same conclusion. We see no reason why experts who are predicting future events would always reach the same conclusions regarding their risk evaluations, and we are aware of no legal authority holding that an expert's recognition that other experts may reach different conclusions renders the expert's opinion unreliable. Moreover, Gollihar did not make a pretrial

objection that Dr. Gaines's opinion was unreliable based on this testimony, nor did he object on that basis at trial. Because Gollihar made no objection to the trial judge consistent with the one he now urges, we hold that he waived this reliability argument regarding Dr. Gaines's methodology.

### Peer Review

■ Gollihar also questions the reliability of Dr. Gaines's clinical judgment in the absence of a peer review process. However, the record does not show that the clinical judgments of physicians generally, or psychiatrists specifically, are subjected to peer review.

■ When we review the trial court's admission of expert testimony, certain legal principles guide us. Generally, a trial court functions as a gatekeeper in deciding whether to admit or exclude expert opinion. *See* Harvey Brown, *Procedural Issues Under Daubert*, 36 Hous. L.Rev. 1133, 1158–59 (1999). The Rules of Evidence permit expert testimony on scientific, technical, or other specialized subjects if the testimony would assist the fact finder in understanding the evidence or determining a fact issue. *See* Tex.R. Evid. 702. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling on reliability unless the record shows that the court acted without reference to the pertinent guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex.1995).

With respect to expert opinion in fields such as the social sciences or fields based primarily on experience and training as opposed to the scientific method, the Court of Criminal Appeals has directed trial courts to consider: "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and

(3) whether the expert's testimony properly relies on or utilizes the principles involved in the field." *Russeau v. State*, 171 S.W.3d 871, 883(Tex.Crim.App.2005), *cert. denied*, — U.S. ——, 126 S.Ct. 2982, 165 L.Ed.2d 990. The *Russeau* Court applied these considerations in a death penalty case to evaluate the admissibility of the opinions of a psychologist and psychiatrist about a defendant's future dangerousness. *Id.* at 883–84. The Court characterized these types of opinions regarding future dangerousness as "soft" science. *Id.* at 883.

Because an opinion on future dangerousness is similar to a prediction that a person will likely reoffend, we apply the *Russeau* factors to evaluate whether the trial court erred in admitting Dr. Gaines's opinion. First, we note that our courts accept that psychiatrists and forensic psychiatrists may testify regarding future dangerousness. *Id.* at 884. Second, Dr. Gaines's opinion regarding the dangerousness of pedophiles appears to fall within her training as a psychiatrist. She testified that she had received training in risk assessment during her formal schooling, during her residency, during her fellowship, and during her eleven years since graduation. Finally, her opinion was based upon the methodology followed by experts in her field: she reviewed the relevant records and conducted a psychiatric interview of the defendant. Although the testimony at the pretrial hearing could have been more detailed, we conclude that the *Russeau* standards favor the trial court's admission of Dr. Gaines's opinion.

■ Subsequent to *Russeau*, the Court of Criminal Appeals further instructed appellate courts to consider certain factors in cases involving expert opinion. *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex.Crim.App. 2006). We are to consider: (1) whether the field of expertise is complex; (2)

whether the expert's opinion is conclusive and, if so, to what degree; and (3) whether the testimony is dispositive on the disputed issues. *Id.* Using these standards, the Court of Criminal Appeals held that a trial court did not err in admitting the testimony of an expert who testified that the defendant's shoes and tires were similar to shoe and tire imprints found at a crime scene. *Id.* at 533. In its analysis, the court noted:

> The reason this kind of testimony is liberally allowed is that the field of tire and shoe comparisons is not particularly complex, the witness's opinions are not conclusive, and consequently, they are generally not pivotal to the resolution of the case. *Id.*

First, in accord with *Rodgers,* we address the complexity of Dr. Gaines's opinion that Gollihar would reoffend. Her testimony appears principally to be based upon Gollihar's pedophilia diagnosis, his recent history of sexual fantasy, and his current enrollment in a treatment program that he had not completed. Generally, when a patient has not completed his treatment program for a disease and a doctor concludes that the patient has a disease, had past symptoms from the disease, and has current symptoms from the disease, the doctor's opinion that the patient will continue to suffer symptoms does not strike us as difficult or complex. The evaluation that Gollihar is likely to reoffend is certainly not scientifically complex, as is the science involved in DNA testing Thus, the first *Rodgers* factor favors admissibility.

Next, we evaluate the conclusiveness of Dr. Gaines's opinion on the issue. In this trial, the jury heard testimony from Dr. McGarrahan that tended to contradict Dr. Gaines's risk assessment. Dr. Gaines testified that other qualified witnesses might have different opinions on the issue. In addition to expert testimony, the jury heard that Gollihar had previously committed other sexually violent offenses and that he had not completed his current treatment. The jury also heard about the support system available to Gollihar upon his release from prison and heard his testimony that he did not consider his reoffending to be likely. Thus, the jury had data from which it could form its own conclusions about the likelihood that Gollihar would reoffend. Although the jury likely relied to some extent on Dr. Gaines's opinion, her testimony was not conclusive and the jury could have rejected her opinion. This *Rodgers* factor also favors the admissibility of her opinion.

Third, we evaluate whether Dr. Gaines's opinion was pivotal. She based her testimony on facts and data gathered from her interview with Gollihar, his prior offenses, and his records. She explained the data that she used in forming her opinion and how she applied the information to reach her opinion. The jury heard testimony from sources other than Dr. Gaines regarding Gollihar's past history and his history of recent sexual fantasy that involved a child. While Dr. Gaines's opinion assisted the jury in its decision, the jury was also entitled to rely on its evaluation of all of the evidence. Thus, while Dr. Gaines's opinion was important, we cannot say that her opinion was pivotal to the jury's decision. We consider this factor as neither favoring, nor disfavoring, the trial court's decision in admitting the opinion.

Having reviewed the various considerations potentially applicable to Dr. Gaines's opinion concerning the likelihood of reoffending, we conclude the trial court acted within its discretion in admitting her testimony. We hold that the trial court did not abuse its considerable discretion in allowing into evidence Dr. Gaines's opinion that Gollihar would likely reoffend. Ap-

855

pellant's issues are overruled, and we affirm the judgment and order of civil commitment.

AFFIRMED.