In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-09-00009-CV


____________________



IN RE COMMITMENT OF HORACE BURNETT






On Appeal from the 435th District Court


Montgomery County, Texas


Trial Cause No. 08-03-02884-CV






MEMORANDUM OPINION


 The State of Texas filed a petition to civilly commit Horace Burnett as a sexually
violent predator under the Sexually Violent Predator Act (the "Act"). See Tex. Health &
Safety Code Ann. §§ 841.001-.150 (Vernon 2003 & Supp. 2009). A jury found Burnett
suffers from a behavioral abnormality making him likely to engage in a predatory act of
sexual violence. Id. § 841.003 (Vernon 2003). The trial court entered a final judgment and
order of civil commitment under the Act. In two issues, appellant argues on appeal that (1)
the evidence is legally insufficient to support the jury's finding, and (2) the trial court erred
in denying appellant's motion for directed verdict. 

 To civilly commit a person under the Act, the State must prove beyond a reasonable
doubt that a person is a sexually violent predator. Id. § 841.062(a) (Vernon 2003). The Act
defines "sexually violent predator" as a person who "(1) is a repeat sexually violent offender;
and (2) suffers from a behavioral abnormality that makes the person likely to engage in a
predatory act of sexual violence." Id. § 841.003(a)(1),(2). The Act defines a "behavioral
abnormality" as "a congenital or acquired condition that, by affecting a person's emotional
or volitional capacity, predisposes the person to commit a sexually violent offense, to the
extent that the person becomes a menace to the health and safety of another person." Id. §
841.002(2) (Vernon Supp. 2009). 

 In issue one appellant argues that the testimony of the State's expert witnesses was
conclusory and speculative and, therefore, legally insufficient. Appellant contends that
neither expert stated that appellant currently suffers from aberrant urges that make him likely
to engage in a predatory act of sexual violence and that the expert opinions were based on
outdated information and were not probative. To test the legal sufficiency of the evidence
that support's the jury's finding, we view the evidence in the light most favorable to the
verdict and determine whether a rational jury could have found beyond a reasonable doubt
that Burnett suffers from a behavioral abnormality. In re Commitment of Gollihar, 224
S.W.3d 843, 846 (Tex. App.--Beaumont 2007, no pet.).

 Burnett does not contend that he objected to the foundational data of the State's two
expert witnesses prior to their testifying before the jury but rather, moved for a directed
verdict at the conclusion of the State's evidence because the State's expert witnesses'
testimony was speculative and conclusory. The trial court overruled the motion. Burnett
argues that analytical gaps in the experts' respective opinions apparent on the face of the
record prevent a reviewing court from giving probative value to the opinions of the State's
expert witnesses. 

 The Texas Supreme Court recently explained that "conclusory opinions are legally
insufficient evidence to support a judgment even if the party did not object to the admission
of the testimony." City of San Antonio v. Pollock, 284 S.W.3d 809, 816 (Tex. 2009); Coastal
Transp. Co. v. Crown Cent. Petroleum Corp., 136 S.W.3d 227, 232 (Tex. 2004). If there is
no reliable basis offered for the expert's opinion, the opinion has no weight as probative
evidence. Id. at 816-17. If the opinion has a supporting basis, but there is a reliability
challenge that requires the court to evaluate the underlying methodology, technique, or
foundational data, then an objection "must be timely made so that the trial court has the
opportunity to conduct this analysis." Id. at 817 (quoting Coastal Transp. Co., 136 S.W.3d
at 233).

 Although Burnett argues he is not challenging the methodologies used by the expert
witnesses, much of Burnett's argument to issue one challenges the respective methodologies
of the State's experts because he asserts the experts used outdated information in determining
that Burnett currently suffers from a behavioral abnormality. In Maritime Overseas Corp.
v. Ellis, 971 S.W.2d 402, 409 (Tex. 1998), the Texas Supreme Court held that in order to
preserve such an objection-that an expert's testimony is unreliable and therefore constitutes
no evidence-"a party must object to the evidence before trial or when the evidence is
offered." As the court stated in Ellis, without a timely objection, the offering party is denied
an opportunity to cure any defect that may exist, and therefore may be subject to "trial and
appeal by ambush." Id. For these same reasons, a motion for directed verdict after the
plaintiff has rested its case is likewise insufficient to preserve Burnett's foundational
complaints. See Harris v. Belue, 974 S.W.2d 386, 393 (Tex. App.--Tyler 1998, pet. denied). 
To the extent that Burnett's complaints concern the reliability of the opinions of the State's
two expert witnesses, he did not object before trial or when the evidence was offered and
therefore his complaint was not properly preserved. See Pollock, 284 S.W.3d at 817.

 However, to completely address Burnett's legal sufficiency challenge, we must also
review the record to determine if Burnett has demonstrated that analytical gaps in the
opinions of Dunham and Bailey deprive their respective opinions of probative value. A
review of the record reveals the bases for the opinions stated by each of these experts.

 Dr. Jason Dunham, a forensic psychologist, testified at trial. Dunham testified that
he reviewed records typically relied upon by experts in his field in making this type of
assessment. Dunham further testified that his evaluation was done in accordance with his
training as a professional in his field and in accordance with accepted standards in the field
of psychology. Dr. Dunham met with Burnett for more than two hours. Based on Dr.
Dunham's review of the records, his performance of actuarial tests, and his interview with
Burnett, Dunham opined that Burnett suffers from a behavioral abnormality that predisposes
him to engage in future predatory acts of sexual violence. 

 Pertinent in part to Dunham's opinion were Burnett's past actions. Burnett has an
extensive juvenile criminal history, which includes, among other things, an arrest at age
twelve for aggravated rape and a charge for indecency with a child at age fourteen. Burnett's
juvenile criminal history also includes a variety of other criminal charges and convictions
including charges for theft, breaking and entering, and assault. Burnett was ultimately sent
to juvenile detention where he remained until the age of eighteen. Burnett has two sexual
convictions as an adult. In 1986, roughly a year after being released from juvenile detention,
Burnett pled guilty to aggravated sexual assault of a child. Burnett was eighteen years old
at the time of this offense and his victim was an eleven-year-old girl. During this offense,
Burnett punched the eleven year-old girl in the face, threw her to the ground, then sexually
assaulted her. Burnett pled guilty and received six years probation. Three years later in 1989
Burnett was charged with aggravated sexual assault with a deadly weapon. During this
offense, Burnett was charged with using a knife to force a woman off the street into an
abandoned apartment where he forced her to perform sexual acts on him. Burnett was
convicted of the offense, his probation was revoked, and he received twenty years
confinement. Burnett has been confined since 1989. While incarcerated, Burnett was
disciplined sixty-five times, including two for sexual misconduct. 

 Dunham administered actuarial tests to assist him in assessing Burnett's risk of
reoffense. Dunham explained that the actuarial tests are based upon objective information
and specifically, "elements that are known to correlate with future sexual offending[.]" 
Dunham performed the Static 99 and Minnesota Sex Offender Screening Tool Revised
("MnSOST-R"). Dunham testified that Burnett scored an "eight" on the Static 99, which 
Dunham explained puts Burnett at a "[h]igh risk for reoffense." Dr. Dunham stated that
Burnett scored "plus 14" on the MnSOST-R, which Dunham explained is "not just a high
risk category, but an elevated high risk category." Based on several risk factors, including 
the number of his convictions, the fact that he is a sexual offender, the fact that he committed
sex offenses as both a juvenile and an adult, and his use of violence and weapons during the
commission of some of his offenses, Dunham found Burnett to be sexually deviant. Dunham
found further evidence of sexual deviancy in Burnett's preoccupation with sex, his claim to
have had over one hundred sexual partners, his claim to have had sex with about twenty
males in prison, the young age at which he began having sex, the fact that he prostituted
himself out for sex to both men and women at a young age, and his indication to Dunham
that he may have been having consensual sex with his sister at a young age. According to
Dunham, the fact that Burnett continued to offend after being released from juvenile
detention and while on probation indicated that he is "undeterred by the consequences" of
his actions. Dunham also found significant that there was a wide variety of characteristics
in Burnett's victims. 

 Dunham diagnosed Burnett with antisocial personality disorder, which indicates an
inability to follow rules, the law, or other social norms, as well as a disregard or lack of
concern for other people. Dunham explained that impulsivity is "a definite feature" of
antisocial personality disorder and that Burnett's impulsivity "has continued on . . .
throughout his incarceration." According to Dunham, an antisocial personality disorder
generally means a person has a "criminal mind-set" that is "lifelong." Additionally, Dunham
diagnosed Burnett with a history of polysubstance abuse, but found him to have only a
moderate level of psychopathy. Dunham testified that Burnett's institutional adjustment was
"horrible" and "ranks up there with some of the worst [he has] seen." Finally, Dunham
diagnosed Burnett with paraphilia not otherwise specified, malingering, and borderline
intellectual functioning. Dunham's diagnosis of paraphilia was based on Burnett's sexual
deviancy "in a nonconsensual manner, fantasies or behaviors against nonconsenting adults
or children." Dunham explained that "malingering" "is faking some type of condition for a
secondary gain . . .." This diagnosis was based on Burnett's history of cutting himself and
making suicidal statements in order to be transferred to a different prison unit. Dunham
found significant that Burnett did not take responsibility for his offenses, blamed his victims,
and minimized his conduct in the offenses he committed. During his testimony at trial,
Burnett stated that the incidents which led to his two sexual assault convictions were
consensual sexual activity between him and the alleged victims, including the eleven-year-old girl. Dunham opined that Burnett was at a high risk to reoffend when he was initially
incarcerated and in the twenty years during his incarceration that risk has "gone even higher." 
 Dr. Rhan Bailey, a forensic psychiatrist, also testified at trial. Like Dunham, Bailey
also reviewed records typically relied upon by experts in his field, met with Burnett,
administered actuarial tests, and opined that Burnett suffers from a behavioral abnormality. 
Like Dunham, Bailey also found Burnett's juvenile history significant in making his
assessment. Bailey noted that Burnett displayed a lack of ability to avoid engaging
consistently in wrongful behavior that started at an early age. Notably, Burnett was arrested
over thirty times as a juvenile and detained over twenty times in juvenile hall. The record
shows Burnett started using drugs and alcohol around age eleven. Bailey found Burnett's
substance abuse history significant because the use of toxic or illegal substances at a young
age can hamper the development of a person's ability to temper his impulses and learn to
conform his desires to rules of law. Other factors Bailey found significant in his assessment
were Burnett's use of violence in the commission of his offenses, the commission of offenses
against both males and females, the fact that he offended while already on some type of
supervision, Burnett's position that he did not assault or violate the rights of his victims, and
the fact that Burnett had "great difficulty" with institutional adjustment while incarcerated. 
Bailey also found evidence of an anger control problem, and testified that the records
indicated Burnett's impulsivity developed at an early age. 

 In his assessment of Burnett, Bailey performed the Hare Psychopathy Checklist, the
Static 99, and the MnSOST-R. Bailey testified that Burnett scored "a 31" on the Hare
Psychopathy Checklist, which put Burnett at a "very high risk of reoffending[,]" a "six" on
the Static 99, which also indicated a "high level of risk," and a "ten" on the MnSOST-R,
which indicated a "moderate to moderate high risk" of reoffense. Bailey diagnosed Burnett
with paraphila not otherwise specified and antisocial personality disorder. Among others,
Bailey found the following factors significant in making his assessment: multiple offenses
in the past, past history of violence, offending while on conditional release, a history of
substance abuse, a history of conduct towards younger persons, a history of sexual activity
towards both males and females, as well as the length of Burnett's history of sexual
misconduct. 

 Burnett testified at trial regarding his early sexual activity and confirmed his deviant
sexual behavior began at age eleven. Burnett further testified that he had sexual relationships
during incarceration, still masturbates, and has received over 65 disciplinaries while
incarcerated, including one for masturbating in front of a female officer and one for taking
his clothes off in front of an officer. Burnett further admitted he had been disciplined for
threatening to inflict harm on an officer, fighting with other inmates, and refusing to obey
orders. Burnett agreed that he had a lot of problems during his incarceration. Burnett
likewise agreed that he "sometimes" has an anger control problem and needs to change some
things about himself. 

 Burnett contends that the State's experts relied on "outdated information" and failed
to show he currently suffers from aberrant urges that make him likely to engage in a
predatory act of sexual violence. Dunham admitted that the Static-99 actuarial test focuses
on historical data and that there are not a lot of ways to measure the recent behavior of the
defendant. The record shows that Dunham utilized the information he obtained from
Burnett's actuarial assessment tests and considered the short-comings of the test in reaching
his opinion.

 The jury determines the credibility of the witnesses and the weight to be given their
testimony. In re Commitment of Mullens, 92 S.W.3d 881, 887 (Tex. App.--Beaumont 2002,
pet. denied) (citing Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994)). 
Additionally, "a jury may draw reasonable inferences from basic facts to ultimate facts." Id. 
"[P]roof of serious difficulty in controlling behavior" is required to civilly commit a
defendant under the Act. See Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151
L.Ed.2d 856 (2002). Burnett's "current" difficulty controlling his behavior can be inferred
from his past behavior, his own testimony, and the experts' testimony. In re Commitment of
Wilson, No. 09-08-00043-CV, 2009 WL 2616921, at *5 (Tex. App.--Beaumont Aug. 27,
2009, no pet.) (mem. op.) (citing In re Commitment of Grinstead, No. 09-07-00412-CV, 2008
WL 5501164, at *7 (Tex. App.--Beaumont Jan. 15, 2009, no pet.) (mem. op.)). 

 The record establishes that Dunham and Bailey were both licensed in their respective
fields. Both experts interviewed Burnett and reviewed the records related to Burnett's
history for the time periods before and during incarceration. Both experts testified that they
relied upon records of the type relied upon by experts in their field in conducting such
assessments and both performed their assessments in accordance with their training as a
professional in their field. Both experts based their opinions on the facts and data gathered
from the records reviewed, their interviews with Burnett, and the actuarial tests conducted. 
Both experts explained in detail the facts and evidence they found relevant in forming their
opinion and how those facts played a role in their assessment. Both experts opined that
Burnett suffers from a behavioral abnormality as defined by the Act. Their testimony is not,
as Burnett argues, so speculative and conclusory as to be completely lacking in probative
value.

 Appellant argues that because Dunham failed to apply the statutory definition of
"behavioral abnormality" when making his assessment of Burnett, his testimony is legally
insufficient to support the verdict. We are not persuaded that Dunham's inability to recite
verbatim the legal definition of "behavioral abnormality" during cross-examination renders
his testimony legally insufficient. At trial, Dunham testified that "[i]n the clinical sense [a
behavioral abnormality is] a psychological or psychiatric condition that makes somebody
likely to commit a sexual offense in the future." Dunham explained that while the term is
technically a "legal term," his job as a psychologist is "to apply psychological principles" to
answer the question of whether a behavioral abnormality exists. Dunham was specifically
asked during direct examination, 

 And, using the definition of behavioral abnormality as defined by the Health
and Safety Code as a congenital or acquired condition that, by affecting the
person's emotional or volitional capacity, predisposes him to commit predatory
acts of sexual violence, is it your opinion today that Mr. Burnett suffers from
a behavioral abnormality? 


Dunham unequivocally responded, "[y]es." 

 Dunham's definition of this term in the "clinical sense" merely goes to the weight the
jury might choose to give his testimony. See In re Commitment of Kirsch, No. 09-08-00004-CV, 2009 WL 2045238, at *6 (Tex. App.--Beaumont July 16, 2009, pet. denied) (citing In
re Commitment of Gollihar, 224 S.W.3d at 851). Additionally, Bailey also testified based
on his education, training, and the evaluation he conducted in this case, that appellant suffers
from a behavioral abnormality as defined by the Act. Appellant does not argue on appeal
that Bailey applied an incorrect definition in making his assessment. Viewing the evidence
in the light most favorable to the jury's verdict, we hold a rational jury could have found
beyond a reasonable doubt that Burnett suffers from a behavioral abnormality that makes him
likely to engage in a predatory act of sexual violence. We overrule issue one.

 In issue two, appellant argues that the trial court erred in denying appellant's motion
for directed verdict because the State failed to present legally sufficient evidence to support
the jury's verdict. Because we have found the jury's verdict is supported by legally sufficient
evidence, we overrule issue two. 

 AFFIRMED. 


 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 30, 2009

Opinion Delivered December 31, 2009


Before McKeithen, C.J., Kreger and Horton, JJ.