In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00286-CV**
_____

**IN RE COMMITMENT OF JOHN RILEY RAMSHUR**

**On Appeal from the 1A District Court**
**Tyler County, Texas**
**Trial Cause No. 24,095**

**MEMORANDUM OPINION**

Pursuant to the Sexually Violent Predators Act, a jury unanimously found beyond a reasonable doubt John Riley Ramshur was a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001–.062 (West 2017). In his appeal from the judgment, Ramshur presents two issues. Ramshur asserts the evidence is legally and factually insufficient to support a finding beyond a reasonable doubt he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual

1

violence. *See id.* § 841.003(a)(2). We overrule these issues and affirm the trial court's judgment.

## Standard of Review

In conducting a legal sufficiency review of a trial court's determination that an individual is a sexually violent predator, we employ the same legal sufficiency standard of review applied in criminal cases. *See In re Commitment of Barbee*, 192 S.W.3d 835, 839 (Tex. App.—Beaumont 2006, no pet.) (citing *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied)). Accordingly, we examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the elements required for civil commitment as a sexually violent predator beyond a reasonable doubt. *See Mullens*, 92 S.W.3d at 885 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* at 887 (citations omitted). However, we continue to utilize the factual sufficiency standard of review in sexually violent predator commitment proceedings as previously utilized by the Court of Criminal Appeals in criminal cases. *See Barbee*, 192 S.W.3d at 839. Under that standard, "'we view all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt.'" *In re*

2

*Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied) (quoting *In re Commitment of Gollihar*, 224 S.W.3d 843, 846 (Tex. App.—Beaumont 2007, no pet.)). "'To reverse a case on a factual sufficiency challenge, we must be able to say that the great weight and preponderance of the evidence contradicts the jury's verdict or that the verdict is clearly wrong or manifestly unjust.'" *Id.* (quoting *Gollihar*, 224 S.W.3d at 846).

**Evidence**

Through a penitentiary packet and the testimony of Ramshur, the jury learned he had three convictions for sexual assaults of children. Specifically, Ramshur had one conviction for sexual assault of a child and two convictions for aggravated sexual assault of a child. Ramshur pled guilty to each of these offenses. The two convictions for aggravated sexual assault of a child involved offenses against Ramshur's stepdaughters. The evidence showed the abuse began when the stepdaughters were ages five and seven and continued for nine years. Ramshur admitted at trial he committed these offenses, and the abuse continued for years. The third sexual assault conviction was the result of an offense committed against his girlfriend's daughter, who was intellectually disabled. Records contained within the penitentiary packet showed Ramshur was also indicted for offenses committed against his biological daughter beginning when she was six years old, but that charge

3

was later dismissed in the plea agreement which resulted in the other convictions. Moreover, the record reveals there were allegations involving two other girls that did not result in indictments or convictions. Ramshur was sentenced to twenty years in prison and had served approximately fifteen years at the time of trial. While in prison, Ramshur began a treatment program for sexual offenders, which he continued to receive at the time of trial.

The State's first expert was Dr. Darrel Turner, a licensed clinical psychologist. Dr. Turner described for the jury his methodology for conducting behavioral abnormality evaluations. Dr. Turner testified he reviewed records pertaining to Ramshur and administered certain tests. Additionally, Dr. Turner met with Ramshur for about two and a half hours and interviewed him. Dr. Turner explained records and historical information were important in assessing the offender's risk factors. Dr. Turner diagnosed Ramshur with "pedophilic disorder nonexclusive-type attracted to females." Dr. Turner explained the "nonexclusive" diagnosis meant Ramshur was attracted to children as well as same-age peers. Dr. Turner testified when he met with Ramshur, Ramshur could not identify his offense cycle, which was very concerning. Dr. Turner described what an offense cycle was and how it provides insight into why offenders do what they do, and he explained why it is important for offenders to recognize high-risk situations. Dr. Turner explained some

4

of the current evidence of Ramshur's sexual deviance included his inability to understand and appreciate the damage he has caused by his actions; instead, he blamed the victim and made himself the victim.

In addition to pedophilic disorder, Dr. Turner diagnosed Ramshur with antisocial personality disorder. He explained antisocial personality disorder allows sex offenders to victimize people without remorse. Dr. Turner discussed some behaviors from Ramshur's childhood to support the diagnosis. Dr. Turner testified that while Ramshur was on supervised release for burglary of a habitation, he committed sexual offenses against children, which research indicates is a risk factor. Dr. Turner stated Ramshur's continued victim denigration was an ongoing sign of his antisocial personality disorder, as were his denials and partial admissions.

Dr. Turner administered several assessments, including the PCL-R to measure for psychopathy, and the Static-99R. Ramshur scored 25 out of 40 on the PCL-R, and Dr. Turner classified him as a psychopath.[1] Dr. Turner explained the Static-99R is a risk assessment tool that identifies certain factors related to a higher risk of reoffending, and the more traits the person has, the higher their risk of reoffending.

---

[1] Dr. Turner testified the old cutoff for a psychopath diagnosis was a score of 30 out of 40, but there are new recommendations indicating a score of 25 should be the cutoff. Regardless, Dr. Turner felt Ramshur had a large degree of psychopathic characteristics.

5

Dr. Turner said Ramshur scored zero on the Static tests, which indicates a very low risk of reoffending. Nonetheless, Dr. Turner said in this case the Static score was not a very accurate representation of Ramshur's true risk and outlined various things the Static test did not consider.

Dr. Turner testified protective factors can lower someone's risk level, and Ramshur had certain protective risk factors: no male victims, no substance abuse history, he obtained his GED in prison, and he had realistic release goals for the future, based on the date that Ramshur expected he would be released from prison. Dr. Turner added Ramshur's age could be a protective factor to an extent, since there is usually a large drop-off in the risk of reoffending after age sixty; however, Ramshur continued offending until he was almost forty years old, which statistically is later than a twenty-year-old offender whose risk of offending sharply decreases after age sixty.

Dr. Turner stressed the biggest risk factors for recidivism in Ramshur's case are the presence of psychopathy/antisociality and the presence of sexual deviance. Per Dr. Turner, these risk factors together increase the risk of reoffending exponentially. Dr. Turner testified he believes Ramshur is at a high risk to reoffend. Dr. Turner opined that "Mr. Ramshur suffers from a behavioral abnormality that predisposes him to engage in a predatory act of sexual violence."

6

The State also called Dr. David Self, a psychiatrist, to testify as an expert. Dr. Self described the methodology he uses when he performs an evaluation. He indicated he gathers information from different sources and examines the person to see where the information and facts lead him. Dr. Self testified he does not score any tests, but he reviews the results the psychologists provide. He testified he was informed by empiric research and he looked at risk factors for the patient.

Dr. Self met with Ramshur in December of 2016 for about an hour and a half. With respect to his risk assessment, Dr. Self found it significant that the sexual abuse of Ramshur's stepdaughters began when they were young, around five or six, and persisted over a period of nine or ten years. The other offense involved the daughter of a girlfriend, who was sixteen and intellectually disabled. Dr. Self found Ramshur's use of threats against the victims to be consistent and significant to his evaluation.

Dr. Self diagnosed Ramshur with pedophilic disorder and described the criteria for that diagnosis. Dr. Self believed Ramshur's pedophilic disorder was nonexclusive, which meant he was sexually attracted to adults as well. Dr. Self explained that pedophilic disorder was a chronic condition. He also confirmed it affected Ramshur's emotional and volitional capacity. Dr. Self explained that Ramshur's victim blaming was indicative of a tolerant attitude toward sexual assault.

7

Dr. Self testified denial was a cardinal feature of antisocial characteristics. Dr. Self did not believe Ramshur met the full criteria for antisocial personality disorder; instead, he diagnosed Ramshur as having a personality disorder not otherwise specified with antisocial traits because he found little evidence of a conduct disorder in Ramshur's childhood prior to the age of fifteen. Dr. Self said antisocial traits included failure to obey rules, disregard for people's rights and liberties, lying, and stealing. Dr. Self thought Ramshur had enough problems to call it a disorder but not necessarily a full-blown antisocial personality disorder; however, he did not think it was unreasonable that Dr. Turner diagnosed Ramshur with antisocial personality disorder, explaining it was a "close call." He confirmed that in any case, Ramshur exhibited many antisocial personality traits. Dr. Self explained antisocial traits were relevant to whether Ramshur had a behavioral abnormality because many people have sexually deviant interests, but they do not act on them because they have "social brakes." Most people have moral codes and feelings of guilt that stop them before they act, but when people do not have such controlling social emotions such as guilt, remorse, and empathy, they tend to engage in the deviant act. Dr. Self described his diagnosis as consistent with that of Dr. Turner.

Dr. Self testified that while sex offender treatment has been shown to reduce risk of re-offense to some extent, Ramshur was not doing well in treatment. Dr. Self

8

explained the treatment notes revealed Ramshur was not "owning his acts" but continued to minimize and deny what he had done. When Dr. Self interviewed him, Ramshur indicated he would say or do anything to get out of prison. In other words, he was dotting the I's and crossing the T's to make parole, which meant the treatment would not be effective. Dr. Self testified Ramshur's age is probably the most robust factor that would reduce Ramshur's risk of reoffending.

Dr. Self indicated two overarching notions embodied most of Ramshur's risk: first was sexual deviance or abnormal sexual desires and second was antisocial or criminality about the individual. Dr. Self characterized Ramshur's risk of reoffending as moderate to high. Dr. Self opined that he believed "Mr. Ramshur has the behavioral abnormality that's described in Chapter 841 of the Texas Health and Safety Code."

Psychologist Dr. Marisa Mauro testified as an expert on Ramshur's behalf. Dr. Mauro recited the Code's definition of a behavioral abnormality as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Tex. Health & Safety Code Ann. § 841.002(2). Dr. Mauro testified she looked at the types of sexually violent offenses committed to determine whether the person she is

9

evaluating is at risk of committing more offenses in the future. Dr. Mauro described her methodology in conducting her evaluation of Ramshur. She described her review of Ramshur's records, interviewing him, and utilizing actuarial instruments. She testified she reviews historical records because they help her consider whether someone has a diagnosis, as well as their risk variables.

Dr. Mauro interviewed Ramshur for three hours and forty minutes. She testified that, during the interview, Ramshur summarily denied having committed the offenses on which his convictions are based. Dr. Mauro also discussed the penitentiary packet containing information about Ramshur's convictions and indictments and how she considered the convictions in formulating her opinion. Dr. Mauro indicated she weighted convictions more heavily, and she gives less weight to the individual allegations. Dr. Mauro said Ramshur's criminal history was minimal outside of the sexual convictions. She indicated he was under community supervision for a separate offense when he committed these offenses and conceded that offending while on supervision is a risk factor. She also diagnosed Ramshur with "pedophilic disorder nonexclusive" and "limited to females." Dr. Mauro acknowledged the abuse of his stepdaughters went on for a period of nine to ten years, and she considered the length of abuse when diagnosing pedophilia.

She credited Ramshur for obtaining a GED in prison and associated that with increased life stability and a reduced risk to criminally recidivate. Dr. Mauro testified Ramshur was on track to complete a sex offender treatment program, which can also reduce risk. Her clinical impression was Ramshur had borderline intellectual functioning. Dr. Mauro also testified she disregarded a note from the sexual treatment provider found in Ramshur's files. The note indicated Ramshur was at risk to reoffend, but in Dr. Mauro's opinion, there was no context from which to show how the impression was formed or any indication the provider completed a risk assessment before forming such an opinion, and Dr. Mauro felt the opinion seemed to be more emotionally based.

Dr. Mauro testified that Ramshur does not have a condition that makes him likely to commit a sexually violent offense. While she agreed he has pedophilic disorder, she did not believe that condition alone makes him likely to reoffend, and the static test scores supported her opinion that his risk was low. Dr. Mauro agreed that Ramshur's pedophilic disorder was likely to be a chronic condition. And while Dr. Mauro defined a sexual recidivist as someone who committed a sex offense, was convicted, and then reoffended, she maintained Ramshur did not meet that definition as he was not an individual who committed an offense, was convicted, then went out

11

and did it again. That being said, Dr. Mauro agreed Ramshur had not had the opportunity to reoffend because he has been incarcerated since his convictions.

Dr. Mauro acknowledged Ramshur still exhibited thinking errors. While she agreed Ramshur assumed a victim stance and shifted blame to his victims early on, she testified those things were improving through his treatment. Dr. Mauro confirmed Ramshur has a condition, but she testified it does not predispose him to commit a sexually violent offense to the extent that he is a menace to the health and safety of another person.

Dr. Mauro discussed the testing and assessments she performed on Ramshur. She testified Ramshur scored 25 on the PCL-R, which was the same score Dr. Turner gave him. In determining psychopathy, she used the traditional cutoff of 30. Dr. Mauro believed a score of 25 still falls within a "mixed" range. Mauro did not diagnose antisocial personality disorder, but she did not feel such a diagnosis was completely unreasonable. Dr. Mauro indicated Ramshur's score of zero on the Static-99R test was associated with below average risk, and his score on the Static-2002R test of 3 indicated a low-moderate risk.

Dr. Mauro confirmed her opinion that Ramshur suffers from a deviant condition, but she felt that the condition did not make Ramshur likely to be a menace to the health and safety of others. According to Mauro, Ramsur does not meet the

statutory definition that applies to classifying a person as a sexually violent predator. She characterized Ramshur's risk of reoffending as low to moderate.

**Analysis**

In a civil commitment proceeding under chapter 841 of the Texas Health and Safety Code, the State must prove a person is a sexually violent predator beyond a reasonable doubt. Tex. Health & Safety Code Ann. § 841.062(a). To be a "sexually violent predator," an individual: (1) must be a repeat sexually violent offender; and (2) suffer from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). "Behavioral abnormality" is defined by statute to mean "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

The parties do not dispute Ramshur is a repeat violent sexual offender, and the record reveals he had three convictions for sexually assaulting children, two for aggravated sexual assault of a child and one for sexual assault of a child. The point of contention is whether Ramshur has a behavioral abnormality that makes it likely he will engage in a predatory act of sexual violence. In the case before us, not only did the State's experts diagnose Ramshur with pedophilic disorder, his own expert

13

diagnosed him with the same condition. Moreover, each of the experts testified regarding antisocial traits that Ramshur exhibited, including denial, victim denigration, and casting himself in the role of the victim. Dr. Turner went so far as to diagnose Ramshur with antisocial personality disorder,which allows him to victimize people without remorse. The State's experts explained to the jury the danger associated with these antisocial characteristics when coupled with pedophilic disorder and why it increased the likelihood Ramshur would reoffend.

Although Dr. Mauro agreed Ramshur suffered from pedophilic disorder, she disagreed with the State's experts that this condition made it likely Ramshur would reoffend. She relied heavily on Ramshur's Static-99R score, which was zero. In doing so, she discounted the importance of treatment notes from Ramshur's sex offender treatment program and asserted his denials and victim denigration seemed to be improving. Dr. Mauro also asserted that because Ramshur has not reoffended after his convictions, it is unlikely he would recidivate. In contrast to Dr. Mauro's opinions, the State's experts countered that Ramshur has not had the opportunity to reoffend after his conviction because he has been incarcerated the entire time. Moreover, the State's experts emphasized Ramshur's lack of progress in the sex offender treatment program and pointed to his denials, difficulty grasping terms, and an inability to identify his offense cycle. The State's experts focused on the fact that

Ramshur was on community supervision for other criminal offenses when he offended against these children, which indicates a lack of control and a risk factor for reoffending. Dr. Turner cautioned against relying too heavily on the Static-99R score and stressed Ramshur's risk factors outweighed the protective factors in any assessment. Finally, in his deposition, Ramshur testified that leaving him alone with children was like putting a piece of steak in front of a dog, and Ramshur conceded in front of the jury that he made that statement.

The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Mullens*, 92 S.W.3d at 887. A reasonable jury could have discounted the testimony of Ramshur's expert entirely, partially, or simply given more credence to the State's experts with respect to Ramshur's risk factors and the likelihood he would reoffend. The evidence was clear Ramshur is a repeat violent sexual offender. Moreover, all the experts agree he suffers from pedophilic disorder, which the United States Supreme Court has noted is "a mental abnormality that critically involves what a lay person might describe as a lack of control." *See Kansas v. Crane*, 534 U.S. 407, 414 (2002). Two of the three experts felt he was at risk to reoffend and explained the underlying factors that led them to that conclusion. Where an expert witness provides a basis for their opinion and that basis is supported by the record, the jury resolves any conflicts or contradictions with respect to the

15

expert's testimony. *In re Commitment of Rushing*, No. 09–11–00268–CV, 2012 WL 4466421, at *5 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.). Here "the diagnos[es] of mental disorders informed the experts' opinions regarding whether" Ramshur has a "behavioral abnormality that makes him likely to engage in a predatory act of sexual violence." *See In re Commitment of Williams*, No. 09–14–00407–CV, 2016 WL 1600789, at *4 (Tex. App.—Beaumont Apr. 21, 2016, no pet.) (mem. op.). While the experts disagreed regarding the degree of risk Ramshur poses to committing a sexually violent offense following his release from prison and drew different conclusions from the same evidence, each expert articulated their reasoning to the jury and the evidence each felt supported that reasoning. *See id.* at *5. Each expert explained their evaluation of the risk factors, the protective factors, and the scoring of the actuarial instruments to the jury, and the jury could determine the weight to give to each expert's testimony. *See id.*; *Rushing*, 2012 WL 4466421, at *5. The jury also could have placed significant weight on Ramshur's own words, in which he likened himself being alone with children to steak being placed in front of a dog.

## Conclusion

When examining the evidence in the light most favorable to the verdict, we determine a rational jury could find Ramshur is a sexually violent predator beyond

a reasonable doubt, and therefore, the evidence is legally sufficient to support the verdict. *See* Tex. Health & Safety Code Ann. § 841.062(a); *Mullens*, 92 S.W.3d at 885, 887. Additionally, weighing all the evidence, the verdict does not reflect a risk of injustice compelling us to order a new trial. *See Day*, 342 S.W.3d at 213. We overrule issues one and two. We affirm the trial court's judgment and order of commitment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on October 2, 2018
Opinion Delivered December 6, 2018

Before McKeithen, C.J., Kreger and Horton, JJ.

17